**LYNCH CARPENTER, LLP**
Todd D. Carpenter (SBN 234464)
 todd@lcllp.com
James B. Drimmer (SBN 196890)
 jim@lcllp.com
Matthew J. Zevin (SBN 170736)
 mattz@lcllp.com
1234 Camino del Mar
Del Mar, CA 92014
Telephone: 619.762.1910

**KELLER POSTMAN LLC**
Warren D. Postman (SBN 330869)
 wdp@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: 312.741.5220

Ethan H. Ames (SBN 339027)
 ethan.ames@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: 312.741.5220

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AJA BECKFORD, ZACHARY CUBAS, CHRISTINA LABAJO, and ALEXUS WALLACE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE CHILDREN'S PLACE, INC., a Delaware corporation, <br><br> Defendant. | Case No. 24-cv-06468-CRB <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1. **Violation of California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (Cal. Civ. Code § 1770(a)(19)); and** <br><br> 2. **Violation of California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (Cal. Civ. Code § 1770(a)(14)).** <br><br> **[DEMAND FOR JURY TRIAL]** |

Keller | Postman
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

Plaintiffs Aja Beckford, Zachary Cubas, Christina Labajo, and Alexus Wallace ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated, against Defendant The Children's Place, Inc. ("Defendant" or "Children's Place"), and for their First Amended Complaint state and allege as follows:

## INTRODUCTION

1.     Children's Place, a large national retailer of mostly children's clothes, has imposed an unconscionable and illegal dispute resolution process on consumers—one that allows the retailer to unilaterally determine *ex post* which claims to resolve in court and which claims to resolve in confidential arbitration.  As a result, consumers who wish to bring claims against Children's Place have been forced to waste their time, effort, and money getting whipsawed back and forth between court and arbitration.

2.     Meanwhile, Children's Place continues to get away with its fake-discount scheme.

3.     A real discount is a short-term reduction in price from the normal price of the product. Children's Place tells its customers that they are getting discounts on its products, but Children's Place does not offer a real discount.  Instead, it perpetually offers its products at the supposedly "discounted" prices, meaning that those "discounted" prices are just the normal prices.

4.     Not knowing this deception, however, consumers buy Children's Place's products under the misled belief that they are buying at a real discount.

5.     In 2017, Defendant Children's Place settled consumers' claims arising out of that deception for $6.8 million.  *See Rael v. The Children's Place, Inc.*, No. 16-cv-00370 (S.D. Cal. Jan. 28, 2020), ECF No. 69.

6.     But even after that settlement, Defendant Children's Place continued its fake-discount scheme.  It is therefore being sued again by consumers for those continued deceptive pricing practices. *See Gonzalez v. The Children's Place, Inc.*, No. 22-cv-00816 (C.D. Cal. Aug. 15, 2023), ECF No. 34.

7.     A well-known corporate tactic to evade liability from its consumers is to impose a class-action waiver in an arbitration agreement requiring individual arbitrations of consumer disputes.

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

Since at least 2017, Defendant Children's Place has required its online customers to enter into an arbitration agreement as a condition of making the online purchase.

8.      But far from using arbitration as a way to promote the efficient resolution of consumer claims, Children's Place has used the arbitration agreement as a way to delay its consumers' access to justice.

9.      What happened in the *Gonzalez* action is revealing.  There, the plaintiff filed her proposed class action complaint on April 14, 2022.  *Gonzalez*, No. 22-cv-00816 (C.D. Cal. Apr. 14, 2022), ECF No. 1.  In response, on July 11, 2022, Children's Place moved to compel arbitration, pointing to the parties' arbitration agreement, *Gonzalez*, No. 22-cv-00816 (C.D. Cal. July 11, 2022), ECF No. 12; and on August 10, 2022, the *Gonzalez* plaintiff agreed to arbitrate her claims against Children's Place, *Gonzalez*, No. 22-cv-00816 (C.D. Cal. Aug. 10, 2022), ECF No. 20.  The court therefore compelled arbitration and stayed the case.  *Gonzalez*, No. 22-cv-00816 (C.D. Cal. Aug. 17, 2022), ECF No. 21.

10.      What followed should have been the fast, efficient arbitration that companies for decades have promised in compelling arbitration.  Instead, a year later, on June 6, 2023, the parties filed a stipulation in court to lift the stay and proceed in court.  *Gonzalez*, No. 22-cv-00816 (C.D. Cal. June 6, 2023), ECF No. 22.  The stipulation states that Plaintiff withdrew from arbitration pursuant to Cal. Civ. Proc. Code § 1281.98, which allows a consumer to withdraw from arbitration if the company breaches the arbitration agreement by failing to "pay certain fees and costs . . . required to continue the arbitration proceeding . . . within 30 days after the due date." *Id.* at 2.  The stipulation also states that JAMS, the arbitral forum, "acknowledged receipt of Plaintiff's notice of withdrawal pursuant to [Cal. Civ. Proc. Code § 1281.98] and suspended the administration of the arbitration." *Id.*

11.      In short, Children's Place successfully compelled the *Gonzalez* plaintiff's claims to arbitration, but rather than participating in that arbitration in good faith, it breached the arbitration agreement by failing to timely pay the fees to proceed with arbitration—and as a result, forced the

Keller | Postman
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

2

*Gonzalez* plaintiff to waste a year's effort before being able to resume her litigation in court.[1]

12.     Shortly thereafter, in September 2023, Children's Place posted a revised arbitration agreement on its website.  While the arbitration agreement remained largely the same, Children's Place inserted a new provision in it that required California consumers like Plaintiffs to travel to Hudson County, New Jersey, for their arbitrations.  Children's Place no doubt imposed this burden on its California consumers to deter them from filing arbitrations against it—and this cross-country travel requirement is unconscionable and unenforceable under California law.

13.     But there's more.  Children's Place imposed this cross-country travel requirement knowing that it violates the *Consumer Minimum Standards of Procedural Fairness* at JAMS, the arbitral forum that Children's Place designates.  Why?  Because Children's Place knows that JAMS will decline to administer an arbitration that falls short of its *Consumer Minimum Standards of Procedural Fairness*.  By imposing this cross-country travel requirement on its consumers, Children's Place can pick and choose which disputes to arbitrate.  If it wants arbitration, it can waive the enforcement of its cross-country travel requirement, coming into compliance with JAMS's minimum standards.  But if it does not want arbitration, it can tell JAMS that it will enforce the cross-country travel requirement, causing JAMS to decline to administer the arbitration because the agreement falls short of its minimum standards.

14.     The latter is precisely what happened when Plaintiffs tried to pursue their fake-discount claims against Children's Place in arbitration.  Children's Place decided that it did not want arbitration in this instance.  So Children's Place told JAMS that it would enforce the cross-country

---

[1] The *Gonzalez* case is ongoing, despite Children's Place's continued delay tactics.  Children's Place next argued that the *Gonzalez* case could not proceed in light of the settlement in the prior *Rael* case, in which Children's Place had agreed to pay $6.8 million to resolve earlier claims arising out of its deceptive pricing misconduct.  *Gonzalez*, No. 22-cv-00816 (C.D. Cal. Aug. 3, 2023), ECF No. 29. The *Gonzalez* court stayed the case so that the *Rael* court could address whether the settlement in that case had released the claims asserted in *Gonzalez*.  *Gonzalez*, No. 22-cv-00816 (C.D. Cal. Nov. 1, 2023), ECF No. 43.  On April 3, 2024, the *Rael* court held that the prior settlement of the earlier claims in *Rael* did not release the new claims in *Gonzalez*, and the stay in *Gonzalez* was lifted again. *Rael*, No. 16-cv-00370 (S.D. Cal. Apr. 3, 2024), ECF No. 190 (denying motion to enforce judgment and settlement agreement); *Gonzalez*, No. 22-cv-00816 (C.D. Cal. Apr. 12, 2024), ECF No. 47 (lifting stay). The Court in *Gonzalez* then denied Children's Place motion to dismiss.  *Gonzalez*, No. 22-cv-00816 (C.D. Cal. Nov. 22, 2024), ECF No. 77.

FIRST AMENDED CLASS ACTION COMPLAINT

travel requirement, and JAMS determined that it would not administer Plaintiffs' arbitrations for Children's Place's failure to abide by JAMS's *Consumer Minimum Standards of Procedural Fairness*.

15.     Plaintiffs file this First Amended Complaint on behalf of themselves and all other Californians similarly situated to put an end to Children's Place's bad-faith gamesmanship with its arbitration agreement.  The cross-country travel requirement is unconscionable and unenforceable, not only because it imposes an undue burden on consumers, but also because it effectively gives Children's Place a unilateral right to pick and choose which claims to resolve in confidential arbitration.  This practice must come to an end, and Children's Place must be punished for its bad-faith misconduct.

## THE PARTIES

16.     Plaintiff Aja Beckford is and at all times relevant was, a resident of the City of Alameda, County of Alameda, in the State of California.

17.     Plaintiff Zachary Cubas is and at all times relevant was, a resident of the City of Corona, County of Riverside, in the State of California.

18.     Plaintiff Christina Labajo is and at all times relevant was, a resident of the City of Eastvale, County of Riverside, in the State of California.

19.     Plaintiff Alexus Wallace is and at all times relevant was, a resident of the City of Antioch, County of Contra Costa, in the State of California.

20.     Defendant The Children's Place, Inc., is a corporation organized and existing under the laws of the State of Delaware, and authorized to do business in the State of California, with its principal place of business in the City of Secaucus, County of Hudson, in the State of New Jersey.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

21.     This Court has original jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and Plaintiffs, and at least some members of the proposed Class have a different state citizenship from Defendant.

Keller | Postman
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

22.     This Court has personal jurisdiction over Defendant because it conducts business in the County of Alameda, in the State of California, including by operating retail stores and selling and shipping goods to consumers in the State of California.

23.     Venue is proper under 28 U.S.C. § 1391(b)(1) & (2) because Defendant does business within this District, and a substantial part of the events or omissions that give rise to this action occurred within this District. Filed concurrently is a declaration of venue pursuant to Cal. Civ. Code § 1780(d). *See* Decl. of Aja Beckford (Aug. 7, 2024).

24.     Pursuant to Civil Local Rules 3-2(c) and 3-5(b), divisional assignment is proper in the San Francisco or Oakland Division because a substantial part of the events giving rise to the claims occurred in the county of Alameda. *See id.*

<u>**GENERAL ALLEGATIONS**</u>

***Children's Place purports to mandate arbitration for all disputes with consumers.***

25.     All consumers who make purchases from Children's Place's website, childrensplace.com, must agree to Children's Place's Terms and Conditions ("Terms").  *See* Ex. A (Terms and Conditions (Sept. 10, 2023)).

26.     Each time a consumer makes a purchase from childrensplace.com, a contract between the consumer and Children's Place is formed through a modified clickwrap agreement on Children's Place's checkout page.  This modified clickwrap agreement is disclosed to consumers immediately below the button that the consumer must click to complete the purchase:  "By selecting 'Submit Order', I agree to the <u>Terms & Conditions</u>, and <u>Privacy Policy</u>."  The underlined term "Terms & Conditions" in this disclosure is a hyperlink to the page on Children's Place's website that contains the Terms.

Keller | Postman
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

27. For years, the Terms have purported to take away consumers' rights to resolve their disputes in court: "To the fullest extent permitted by applicable law, any and all claims shall be referred to and finally resolved through binding and confidential arbitration." Ex. A (Terms and Conditions (Sept. 10, 2023)); *see also* Ex. B (Terms and Conditions (Oct. 2022)) (similar); Ex. C (Terms and Conditions (June 2017)) (similar). The Terms define "claims," in turn, to include "any and all controversies, disputes, demands, counts, claims, or causes of action (including but not limited to any claim arising from or relating to your use of the Site, any products or services sold or distributed by The Children's Place, any purchase from The Children's Place, or the sale of any products or services sold or distributed by The Children's Place as well as the interpretation and scope of this clause, and the arbitrability of any claim) between you and The Children's Place." Ex. A (Terms and Conditions (Sept. 10, 2023)). Any arbitration brought under the terms must be conducted by JAMS on an individual basis. *Id.*

28. The Terms also purport to take away consumers' ability to join or pursue a class action against Children's Place: "You acknowledge and agree that . . . you and The Children's Place each waive the right . . . to participate as a plaintiff or class member in any purported class action lawsuit." Ex. A (Terms and Conditions (Sept. 10, 2023)) (capitalization altered). And they purport to strip consumers of their right to a jury trial: "You acknowledge and agree that . . . you and The Children's

FIRST AMENDED CLASS ACTION COMPLAINT

1   Place each waive the right . . . to receive a trial by jury."  Ex. A (Terms and Conditions (Sept. 10,

2   2023)) (capitalization altered).

3          29.     The latest version of the Terms, which Children's Place published on or around

4   September 10, 2023, also includes a new provision within the arbitration agreement that purports to

5   mandate that any arbitration between a consumer in the United States and Children's Place be

6   "conducted in Hudson County, New Jersey," regardless of where in the United States the consumer

7   resides ("Arbitral Venue Provision").  Ex. A (Terms and Conditions (Sept. 10, 2023)).  Prior versions

8   of the arbitration agreements in the Terms did not contain this Arbitral Venue Provision or any other

9   equivalent provision.  *See, e.g.*, Ex. B (Terms and Conditions (Oct. 2022)); Ex. C (Terms and

10  Conditions (June 2017)) (all lacking the Arbitral Venue Provision or its equivalent).

11           ***Plaintiffs attempted to resolve their disputes with Children's Place in arbitration.***

12         30.     Plaintiffs Cubas and Wallace were among a group of around 1,352 consumers who

13  each filed individual arbitration demands with JAMS against Children's Place on August 15, 2023,

14  asserting false discount claims against the company.  They did so rather than filing their claims in

15  court because JAMS arbitration was the dispute resolution mechanism required by the Terms that

16  were in effect at the time of their underlying purchases and at the time they brought their claims.  *See*

17  Ex. B (Terms and Conditions (Oct. 2022)).

18         31.     Plaintiffs Beckford and Labajo were among a group of around 1,370 consumers who

19  each filed individual arbitration demands against Children's Place on May 1, 2024, asserting false

20  discount claims against the company.  Like Plaintiffs Cubas and Wallace, Plaintiffs Beckford and

21  Labajo filed their claims with JAMS because JAMS arbitration was the dispute resolution mechanism

22  required by the Terms that were in effect at the time of their underlying purchases.  *See* Ex. B (Terms

23  and Conditions (Oct. 2022)).

24         32.     The false discount claims asserted by Plaintiffs arise from Children's Place's practice

25  of systematically marketing its products using false and inflated reference prices and then offering

26  those products at substantially lower "sale" prices to lure consumers with the false "discounts" it

27  fabricated.  These false discounts typically range from 30 percent to 60 percent off or more.  This

28

resulting artificial price disparity misleads consumers into believing the affected products have higher

market values, and it induces consumers into buying those products.

33.     Plaintiffs are victims of this sweeping false and deceptive marketing scheme, having

purchased falsely discounted products from Children's Place because they believed that they were

buying those products at substantial discounts from Children's Place's purported "regular" prices.

34.     Plaintiff Beckford's underlying false discount claims against Children's Place arise

from her purchase of children's clothing from Children's Place, including her purchase of such goods

from Children's Place's website, childrensplace.com, on or around July 20, 2023.

35.     Plaintiff Cubas's underlying false discount claims against Children's Place arise from

his purchase of children's clothing from Children's Place, including his purchase of such goods from

Children's Place's website, childrensplace.com, on or around February 3, 2023.

36.     Plaintiff Labajo's underlying false discount claims against Children's Place arise from

her purchase of children's clothing from Children's Place, including her purchase of such goods from

Children's Place's website, childrensplace.com, on or around December 20, 2022.

37.     Plaintiff Wallace's underlying false discount claims against Children's Place arise

from her purchase of children's clothing from Children's Place, including her purchase of such goods

from Children's Place's website, childrensplace.com, on or around November 9, 2022.

38.     The Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.* ("FTCA"), prohibits

"unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)), which

includes "[t]he dissemination . . . of any false advertisement." (15 U.S.C. § 52(b)).   In the pricing

context, the FTC has interpreted the FTCA to prohibit exactly the type of false discount scheme

employed by Children's Place:

> One of the most commonly used forms of bargain advertising is to offer
> a reduction from the advertiser's own former price for an article. If the
> former price is the actual, bona fide price at which the article was
> offered to the public on a regular basis for a reasonably substantial
> period of time, it provides a legitimate basis for the advertising of a
> price comparison.  Where the former price is genuine, the bargain being
> advertised is a true one.  ***If, on the other hand, the former price being
> advertised is not bona fide but fictitious—for example, where an
> artificial, inflated price was established for the purpose of enabling***

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

1
2

> ***the subsequent offer of a large reduction—the "bargain" being advertised is a false one***; the purchaser is not receiving the unusual value he expects.

3    16 C.F.R. § 233.1(a) (emphasis added).  Moreover, the FTCA prohibits advertising a fictitious former

4    price, "whether accompanied or not by descriptive terminology such as 'Regularly,' 'Usually,'

5    'Formerly,' etc."  16 C.F.R. § 233.1(e) (2024).

6          39.    In their demands for arbitration, Plaintiffs each alleged that Children's Place's conduct

7    violates the FTCA, along with California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

8    § 17200 *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*,

9    and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.*

10         40.    Under the Terms, "all controversies, disputes, demands, counts, claims, or causes of

11   action" between Plaintiffs and Children's Place "relating to [Plaintiffs'] use of the Site, any products

12   or services sold or distributed by The Children's Place, any purchase from The Children's Place, or

13   to the sale of any products or services sold or distributed by The Children's Place," were subject to

14   arbitration.  *See* Ex. B (Terms and Conditions (Oct. 2022)).  The only exceptions to the Term's

15   mandatory arbitration requirement were claims that could be heard in a small claims court and certain

16   intellectual property claims.  *See* Ex. B (Terms and Conditions (Oct. 2022)).  Because Plaintiffs'

17   claims related to the products they purchased from Children's Place and could not be brought in small

18   claims court and did not relate to intellectual property, they were subject to mandatory arbitration

19   under the Terms.  *See* Ex. B (Terms and Conditions (Oct. 2022)).

20         41.    After Plaintiffs Cubas and Wallace filed their demands for arbitration with JAMS on

21   August 15, 2023, the parties agreed to stay Plaintiff's arbitration on September 13, 2023, so they

22   could attempt to resolve Plaintiffs Cubas's and Wallace's claims through good-faith negotiation and

23   mediation.  The arbitrations of the 1,350 other consumers who filed individual demands for arbitration

24   demands with JAMS against Children's Place alongside Plaintiffs Cubas and Wallace were also

25   stayed under the same standstill agreement.  The parties' ensuing efforts to resolve Plaintiffs Cubas's

26   and Wallace's claims were ultimately unsuccessful, and the agreed-upon stay of Plaintiffs Cubas's

27   and Wallace's arbitrations expired on April 30, 2024.

28

9

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

42. Just after the expiration of that stay, on May 1, 2024, Plaintiffs Beckford and Labajo filed their demands for arbitration with JAMS alongside another 1,368 consumers, asserting false discount claims against the company.

**Children's Place exploits the Arbitral Venue Provision to escape arbitration.**

43. In response to being served with an additional 1,370 individual demands for arbitration and the expiration of the stay of the earlier filed arbitrations (including the stay of Plaintiff's arbitration), on May 1, 2024, Children's Place sent a letter to JAMS ("May 1, 2024 Letter"). *See* Ex. D (May 1, 2024 Letter). In that letter, the company asserted that the September 10, 2023 version of the Terms should apply to Plaintiff's arbitration. *See* Ex. D (May 1, 2024 Letter).

44. Children's Place notified JAMS in its May 1, 2024 Letter that it considered the Arbitral Venue Provision contained in the September 10, 2023 version of the Terms to be "material to [Children's Place]." *See* Ex. D (May 1, 2024 Letter).

45. Children's Place also notified JAMS in its May 1, 2024 Letter that it would not waive the Arbitral Venue Provision, which would require Plaintiffs' arbitration hearings to occur in Hudson County, New Jersey—even though Plaintiffs all live on the other side of the United States and requested a hometown arbitration hearing in their demands for arbitration. *See* Ex. D (May 1, 2024 Letter).

46. Thereafter, between May 1, 2024, and May 15, 2024, the parties each sent several letters to JAMS concerning the issues raised by Children's Place's May 1, 2024 Letter.

47. Then, on June 10, 2024, JAMS responded to the parties' letters ("June 10, 2024 Letter"). *See* Ex. E (June 10, 2024 Letter). In that letter, JAMS made two findings about the Arbitral Venue Provision:

48. *First*, JAMS found that the Arbitral Venue Provision violates the JAMS Consumer Minimum Standards, effective July 15, 2009 ("2009 Consumer Minimum Standards"), which apply to Plaintiff's arbitration. *See* Ex. E (June 10, 2024 Letter). As JAMS explained, "Standard 5 of the 2009 [Consumer] Minimum Standards states [that] '[t]he consumer must have a right to an in-person hearing in his or her hometown area.'" And quoting from the May 1, 2024 Letter, JAMS noted that

Children's Place "does not waive the [Hudson County, NJ] Venue Term of the arbitration agreement, which is material to [Children's Place]." *See* Ex. E (June 10, 2024 Letter) (quoting May 1, 2024 Letter). Thus, considering Standard 5 of the 2009 Consumer Minimum Standards, and Children's Place's refusal to waive the Arbitral Venue Provision, JAMS concluded that "[a] requirement to hold the arbitration in Hudson County, New Jersey, violates the 2009 [Consumer] Minimum Standards for all Claimants who do not reside in Hudson County, New Jersey." *See* Ex. E (June 10, 2024 Letter).

49.    *Second*, based on its finding that the Arbitral Venue Provision violates the 2009 Consumer Minimum Standards, JAMS further found that "where the [Consumer] Minimum Standards apply and the company refuses to abide by the Minimum Standards, JAMS will decline to administer the arbitration." *See* Ex. E (June 10, 2024 Letter).

50.    To date, JAMS has declined to administer Plaintiffs' arbitrations against Children's Place, including because Children's Place has not rescinded its prior refusal to waive the Arbitral Venue Provision.

51.    That the Arbitral Venue Provision prevents Plaintiffs' arbitrations from being administered by JAMS is not the product of a drafting error by Children's Place. Rather, it is a central feature of the September 10, 2023 version of the Terms drafted by Children's Place, allowing the company to foist an unconscionable arbitration agreement on consumers like Plaintiffs.

52.    Indeed, Children's Place modified the Terms within one month of being served with more than a thousand individual demands for arbitration, including Plaintiffs Cubas's and Wallace's demands for arbitration, to add the Arbitral Venue Provision for this unconscionable purpose. *Compare* Ex. B (Terms and Conditions (Oct. 2022)), *with* Ex. A (Terms and Conditions (Sept. 10, 2023)).

53.    Upon information and belief, when Children's Place modified the Terms to add the Arbitral Venue Provision, it did so with the knowledge or belief that JAMS would refuse to administer consumer arbitrations under the September 10, 2023 version of the Terms because the Arbitral Venue Provision violates the 2009 Consumer Minimum Standards. Children's Place's decision to modify the Terms in this manner was intentionally made in bad faith to oppress and defraud consumers. *See*

Cal. Civ. Code § 3294(a). And the decision was made by, and ratified by, Children's Place's officers, directors, and managing agents.

54. Children's Place's conduct in modifying the Terms to add the Arbitral Venue Provision was intended by Children's Place to cause injury to Plaintiffs' pecuniary interests, and such conduct was carried out by Children's Place with a willful and conscious disregard of Plaintiffs' rights, including Plaintiffs' rights to arbitrate under the Terms.

55. In modifying the Terms to add the Arbitral Venue Provision, Children's Place subjected Plaintiffs to cruel and unjust hardship in conscious disregard of that Plaintiffs' rights, including Plaintiffs' rights to arbitrate under the Terms.

56. Moreover, Children's Place's modification of the Terms to add the Arbitral Venue Provision was accomplished through Children's Place's intentional misrepresentation, deceit, or concealment of a material fact known to Children's Place with the intention of Children's Place to thereby deprive Plaintiffs of their property or legal rights, including Plaintiffs' rights to arbitrate under the Terms.

**<u>CLASS ACTION ALLEGATIONS</u>**

57. Plaintiffs bring this action on behalf of themselves and a class ("Class") defined as:

> All persons, within the State of California, who, within the applicable period ("Class Period"), made a purchase from Children's Place's website, childrensplace.com.

58. The Class Period is the period beginning on June 1, 2017, and ending on the day that the Court declares the Arbitral Venue Provision to be unconscionable and unenforceable.

59. ***Ascertainability.*** The Class is ascertainable. Children's Place maintains business records that will permit the Court to identify all members of the Class with reasonable certainty.

60. ***Numerosity.*** The Class is sufficiently numerous. Plaintiffs are informed and believe that the Class includes at least thousands of individuals, making the joinder of all members of the Class impracticable.

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

FIRST AMENDED CLASS ACTION COMPLAINT

61.    ***Commonality.***  The Class has a community of interest.  Common questions of law and fact predominate over any questions affecting individual Class members.  These common questions of law and fact include: (a) whether the Arbitral Venue Provision violates JAMS's Consumer Minimum Standards; (b) whether the arbitration agreement contained in the September 10, 2023 version of the Terms is procedurally unconscionable; (c) whether the arbitration agreement contained in the September 10, 2023 version of the Terms is substantively unconscionable; (d) whether Children's Place represented to Class members that the Terms provide them with a right to arbitrate their disputes against the company with JAMS; (e) whether Children's Place represented to Class members that the Terms obligated the company to arbitrate claims against the company by Class members with JAMS; (f) whether Plaintiffs and members of the Class are entitled to the declaratory relief prayed for in this First Amended Complaint; (g) whether Plaintiffs and members of the Class are entitled to the injunctive relief prayed for in this First Amended Complaint; and (h) whether Plaintiffs and members of the Class are entitled to the recover the attorneys' fees and costs of suit prayed for in this First Amended Complaint.

62.    ***Typicality.***  Plaintiffs' claims are typical of the claims of the member of the Class because the unconscionable provision that Children's Place inserted into Plaintiffs' contracts is the same unconscionable provision Children's Place inserted into all Class members' contracts.  Moreover, the false representations that Children's Place made to Plaintiffs are the same false representations that Children's Place made to all Class members.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

63.    ***Adequacy.***  Plaintiffs are fair and adequate representatives of the Class.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs have no antagonistic or adverse interest to those of the Class.

64.    ***Superiority.***  The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged in this First Amended Complaint.  The

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

injuries suffered by individual members of the Class are modest compared to the burden and expense that would be entailed by individual litigation of Class members' claims against Children's Place.  It would thus be nearly impossible for Plaintiffs and members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  With no class action, members of the Class would not likely obtain the relief sought by this action, and Children's Place would be permitted to profit from its wrongful conduct.

**FIRST CAUSE OF ACTION**
**Violation of California Consumer Legal Remedies Act,**
**Cal. Civ. Code § 1750 *et seq.***
**(Cal. Civ. Code § 1770(a)(19))**

65.     Plaintiffs incorporate by this reference each and all the allegations contained in Paragraphs 1– of this First Amended Complaint, as fully as though set forth at length herein.

66.     This cause of action is brought under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*  Plaintiffs and each member of the Class are "consumers" under Cal. Civ. Code § 1761(d).    Children's Place's sale of products through its website, childrensplace.com, are "transactions" under Cal. Civ. Code § 1761(e).  And the products purchased by Plaintiffs and members of the Class are "goods" or "services" under Cal. Civ. Code § 1761(a)–(b).

67.     Plaintiffs and members of the Class each purchased various products from Children's Place for personal, family, or household purposes—namely children's clothing.

68.     Children's Place violated Cal. Civ. Code § 1770(a)(19) by "[i]nserting an unconscionable provision in the contract," for the purchase of those products by Plaintiffs and members of the Class.

69.     "[Cal. Civ. Code] § 1770(a)(19) prohibits inserting an unconscionable provision in the contract as part of the sale or lease of goods to a consumer.  Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable.  Procedural unconscionability focuses on the level of oppression or surprise in the negotiation of the agreement due to unequal bargaining power.  Substantive unconscionability focuses on the one-sidedness or

1    overly harsh effect of the contract term or clause." *Fierro v. Cap. One, N.A.*, 656 F. Supp. 3d 1121,

2    1130 (S.D. Cal. 2023) (cleaned up).

3        70.    On September 10, 2023, Children's Place modified the Terms to add the Arbitral

4    Venue Provision to the arbitration agreement contained in the Terms.  The inclusion of the Arbitral

5    Venue Provision in the arbitration agreement renders the entire arbitration agreement unconscionable

6    under California law:

7        71.    *First*, the arbitration agreement contained in the September 10, 2023 version of the

8    Terms is procedurally unconscionable because it is an adhesion contract.  The Terms, including the

9    arbitration agreement contained therein, are a form contract that is not subject to negotiation.  They

10   are imposed and drafted by Children's Place, which has superior bargaining power relative to

11   Plaintiffs and individual members of the Class.  And Plaintiffs and members of the Class can only

12   purchase products from Children's Place if they accept the Terms.  The arbitration agreement is also

13   procedurally unconscionable because it includes an element of surprise.  Among other things, it is

14   surprising that Children's Place would designate JAMS as its chosen arbitral forum and then include

15   a provision that is supposedly material to the company which violates JAMS's Consumer Minimum

16   Standards.

17       72.    *Second*, the arbitration agreement contained in the September 10, 2023 version of the

18   Terms is substantively unconscionable because it involves terms that are so one-sided that they shock

19   the conscience, and it imposes harsh and oppressive terms on consumers, including Plaintiffs and

20   members of the Class.  Among other terms in the arbitration agreement, the Arbitral Venue Provision

21   is so one-sided that it shocks the conscience and renders the arbitration agreement substantively

22   unconscionable.

23       73.    As shown by JAMS's findings in the June 10, 2024 Letter, the Arbitral Venue

24   Provision effectively transforms the arbitration agreement into a unilateral obligation.  It allows

25   Children's Place to pick and choose which consumer disputes it will permit to proceed in arbitration

26   against it. If Children's Place wants to permit a consumer's claim to proceed against it in arbitration,

27   the company can agree to waive the Arbitral Venue Provision.  And if it does not want a consumer's

28

Keller | Postman
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

claim to proceed against it in arbitration, Children's Place can refuse to waive the Arbitral Venue Provision. Courts have regularly found this type of unilateral arbitration obligation to be substantively unconscionable under California law. *See, e.g.*, *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1332 (1999); *Murrey v. Superior Ct.*, 87 Cal. App. 5th 1223, 1251–52 (2023); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117–18 (2000).

74.    Moreover, even ignoring JAMS's findings in the June 10, 2024 Letter, the Arbitral Venue Provision is still so one-sided that it shocks the conscience and renders the arbitration agreement substantively unconscionable. If enforced, the Arbitral Venue Provision would require consumers like Plaintiffs and members of the Class—who all live in California—to arbitrate their claims against Children's Place on the other side of the country in New Jersey (where Children's Place is headquartered). And if consumers wanted to challenge the enforceability of the Arbitral Venue Provision, they would need to do so before an arbitrator in New Jersey.

75.    Plaintiffs and members of the Class were harmed by Children's Place's violation of Cal. Civ. Code § 1770(a)(19) because they have been deprived of the ability to arbitrate their claims with JAMS. Plaintiffs and members of the Class have also been harmed through the loss of time and money they have suffered in attempting to arbitrate their claims with JAMS.

76.    This harm resulted directly and proximately from Children's Place's violation of Cal. Civ. Code § 1770(a)(19) because Plaintiffs and individual members of the Class would have been able to arbitrate their claims with JAMS if Children's Place had not modified the Terms to add the Arbitral Venue Provision to the arbitration agreement contained in the Terms.

77.    Pursuant to Cal. Civ. Code § 1782(a), on July 5, 2024, Plaintiffs' counsel, on behalf of Plaintiffs, served Defendant by certified mail, return receipt requested, with notice of Defendant's violations of the CLRA and requested that Defendant identify all affected consumers and remedy its illegal conduct within 30 days. *See* Exs. F–I (CLRA Notice Letters (July 5, 2024)). More than 30 days have passed, and Defendant has failed to fully, completely, and timely comply with Plaintiffs' demands. *See* Cal. Civ. Code § 1782(d). Thus, Plaintiffs are seeking statutory, punitive, and any damages, as appropriate, against Defendant.

1
2
3

**SECOND CAUSE OF ACTION**
**Violation of California Consumer Legal Remedies Act,**
**Cal. Civ. Code § 1750 *et seq.***
**(Cal. Civ. Code § 1770(a)(14))**

4    78.    Plaintiffs incorporate by this reference each and all the allegations contained in

5    Paragraphs 1– of this First Amended Complaint, as fully as though set forth at length herein.

6    79.    Children's Place violated Cal. Civ. Code § 1770(a)(14) by "[r]epresenting that a

7    transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that

8    are prohibited by law," in connection with the transactions that Plaintiffs and members of the Class

9    made with the company.

10    80.    When Children's Place sold products to Plaintiffs and members of the Class, it

11    represented to them that those transactions would be governed by the Terms, including its arbitration

12    agreement designating JAMS as the forum for resolving any claims by Plaintiffs and members of the

13    Class relating to those transactions.  Put differently, Children's Place represented to Plaintiffs and

14    members of the Class that they would have the right to arbitrate with JAMS, and it represented to

15    them that the company had an obligation to arbitrate with JAMS.

16    81.    But as shown by Children's Place's subsequent conduct, and JAMS's findings in the

17    June 10, 2024 Letter, neither of these representations made by Children's Place was true.  In reality,

18    Plaintiffs and members of the Class have no right to arbitrate with JAMS—else the arbitrations

19    Plaintiffs initiated on August 15, 2023, and May 1, 2024, would have been administered by JAMS.

20    Likewise, Children's Place has no real obligation to arbitrate—else JAMS would have administered

21    the arbitration that Plaintiffs initiated against the company on August 15, 2023, and May 1, 2024.

22    82.    Plaintiffs and members of the Class were harmed by Children's Place's violation of

23    Cal. Civ. Code § 1770(a)(14) because they have been deprived of the ability to arbitrate their claims

24    with JAMS, which Children's Place represented they had a right to do.  Plaintiffs and members of the

25    Class have also been harmed through the loss of time and money they have suffered in attempting to

26    arbitrate their claims with JAMS.

27
28

**Keller | Postman**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

83.     The harm to Plaintiffs and members of the Class was the direct and proximate result of Children's Place's violation of Cal. Civ. Code § 1770(a)(14) because they would not have attempted to arbitrate their claims against Children's Place if it had not represented to Plaintiffs and members of the Class that they would have the right to arbitrate with JAMS, and that the company had an obligation to arbitrate with JAMS.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Enter an order certifying the Class, designating Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class.

2.     Enter a declaration that the Arbitral Venue Provision is unconscionable;

3.     Enter a declaration that the arbitration agreement contained in the September 10, 2023 version of the Terms is unconscionable;

4.     Enter an injunction that prohibits Children's Place from enforcing the Arbitral Venue Provision;

5.     Enter an injunction that requires Children's Place to waive the Arbitral Venue Provision;

6.     Awarding Plaintiffs and the Class compensatory damages, injunctive relief, statutory damages, punitive or exemplary damages;

7.     Award Plaintiffs their attorneys' fees and costs of suit to the extent permitted by law or contract; and

8.     Enter all such other relief as the Court may deem proper.

FIRST AMENDED CLASS ACTION COMPLAINT

Keller | Postman
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
312.741.5220

Dated: November 25, 2024                    **LYNCH CARPENTER, LLP**

                                     By:    */s/ Matthew J. Zevin*
                                            Todd D. Carpenter
                                            James B. Drimmer
                                            Matthew J. Zevin

                                            **KELLER POSTMAN LLC**
                                            Warren D. Postman
                                            Ethan H. Ames


                                            *Attorneys for Plaintiffs and the Putative Class*

FIRST AMENDED CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs Aja Beckford, Zachary Cubas, Christina Labajo, and Alexus Wallace ("Plaintiffs") hereby demand a jury trial in the above-captioned action on all issues triable as of right to a jury.

Dated: November 25, 2024

**LYNCH CARPENTER, LLP**

By:     */s/ Matthew J. Zevin*
        Todd D. Carpenter
        James B. Drimmer
        Matthew J. Zevin

**KELLER POSTMAN LLC**
Warren D. Postman
Ethan H. Ames

*Attorneys for Plaintiffs and the Putative Class*