IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJA BECKFORD, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE CHILDREN'S GROUP, INC.,<br><br>    Defendant. | Case No. 24-cv-06468-CRB<br><br>**ORDER DENYING MOTION TO DISMISS** |

This case arises in an unusual procedural posture. Plaintiffs, a group of California consumers, all brought arbitration demands against The Children's Place (or TCP) for running an alleged fake-discount scheme. JAMS, the arbitrator, terminated arbitration after TCP refused to consent to arbitration in California. But this case is not at all about TCP's alleged fake-discount scheme. Instead it raises a different question: If a company sets out an arbitration agreement on which consumers rely, and then prevents that arbitration from going forward, what remedies are available to those consumers?

Plaintiffs bring this purported class action against TCP and allege that TCP unlawfully drafted and amended its Terms and Conditions so as to unilaterally deprive Plaintiffs of their ability to pursue their claims in arbitration, which the Terms promised as an available remedy. Plaintiffs contend that TCP violated California's Consumer Legal Remedies Act (1) by representing that certain remedies are available to consumers even though those remedies do not exist and (2) by inserting unconscionable provisions in its Terms. Plaintiffs seek injunctive relief, declaratory relief, and damages. TCP now moves to dismiss, raising a slew of challenges to Plaintiffs' claims. None of TCP's arguments warrant dismissal, however, so the Court **DENIES** TCP's motion to dismiss.

## I. BACKGROUND

### A. The Parties

Plaintiffs Aja Beckford, Zachary Cubas, Christina Labajo, and Alexus Wallace are California residents, all of whom purchased products from TCP. First Am. Compl. (dkt. 21) ¶¶ 16–19, 33–37. Beckford purchased products from TCP's website in July 2023, Cubas in February 2023, Labajo in December 2022, and Wallace in November 2022. Id. ¶¶ 34–37. TCP is a national retailer of children's clothes that is incorporated in Delaware and that has its principal place of business in New Jersey. Id. ¶ 20. TCP does business in California, including by operating a retail store in Alameda County. Beckford Decl. (dkt. 21-10) ¶ 3.

### B. Proceedings Before JAMS

Plaintiffs all filed arbitration demands against TCP with JAMS in California. FAC ¶¶ 30–31. Plaintiffs Cubas and Wallace (and over 1,000 other consumers) filed their demands on August 15, 2023, and Plaintiffs Beckford and Labajo (and over 1,000 others) filed their demands on May 1, 2024. Id. ¶¶ 41–42. In their demands, Plaintiffs alleged that TCP was engaged in a "false discount" scheme, which basically consists of marketing products with inflated prices and then using so-called sales to convince customers that they are getting a deal. Id. ¶ 32.

All four Plaintiffs (and the many others) filed arbitration demands rather than filing suit in state or federal court. They did so pursuant to TCP's Terms and Conditions, which at the time Plaintiffs purchased their products stated as follows:

> To the fullest extent permitted by applicable law, any and all controversies, disputes, demands, counts, claims, or causes of action … between you and [TCP] shall exclusively be settled through binding and confidential arbitration, except that you or [TCP] may take claims to small claims court if the dispute qualifies … .
>
> The arbitration shall be conducted by [JAMS] pursuant to the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the "JAMS Rules") and as modified by this agreement to arbitrate. The JAMS Rules, including instructions for bringing arbitration, are available at its website at [hyperlink]. The Minimum Standards are available at [hyperlink] or by calling 1-800-352-5267.

2

2022 Terms (dkt. 21-2) at 6; see also 2017 Terms (dkt. 21-3) at 4–5.  In September 2023 TCP amended its Terms and Conditions to add an Arbitral Venue Provision, stating that any arbitration would take place in Hudson County, New Jersey.  FAC ¶ 29; 2023 Terms (dkt. 21-1) at 6.  At this point, Plaintiffs Cubas and Wallace had already filed their arbitration demands in California.  FAC ¶ 41.  Yet TCP notified JAMS of its 2023 Terms, asserted that those Terms—and in particular, the Arbitral Venue Provision—applied to Plaintiffs' arbitration, and refused to waive venue.  Id. ¶¶ 43–45; TCP Letter (dkt. 21-4).

JAMS terminated arbitration for all Plaintiffs.  See JAMS Letter (dkt. 21-5).  JAMS gave two reasons: First, JAMS explained that "the parties disagree over whether an arbitration agreement exists as to any Claimant" and that "[a] facial review of the documents submitted to date sheds no light on the issue."  Id. at 2.  Second, JAMS stated that the Arbitral Venue Provision's "requirement to hold the arbitration in Hudson County, New Jersey, violates the 2009 Minimum Standards for all Claimants who do not reside in Hudson County, New Jersey, and it potentially violates the 2024 Minimum Standards for the same set of Claimants."[1]  Id. at 3.  JAMS continued: "Where the Minimum Standards apply and the company refuses to abide by the Minimum Standards, JAMS will decline to administer the arbitration unless the consumer agrees to waive the Standard(s) in question.  The parties should bear this in mind notwithstanding the issue of contract formation."  Id.

### C. Procedural History

Plaintiffs bring two claims against TCP, both under the Consumer Legal Remedies Act.  First, Plaintiffs assert that TCP violated California Civil Code section 1770(a)(14), which prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law," when it represented in the 2022 Terms that consumers would be able to arbitrate their claims before JAMS.  FAC ¶¶ 78–83.  Second, Plaintiffs assert that TCP violated Civil Code

---

[1] The 2009 Minimum Standards state that a "consumer must have a right to an in-person hearing in his or her hometown area."  JAMS Letter at 3.  The 2024 Minimum Standards state that a "consumer's access to arbitration must not be precluded by the location of the arbitration."  Id.

3

section 1770(a)(19), which prohibits "[i]nserting an unconscionable provision in the contract," by unilaterally amending the Terms and Conditions to add the Arbitral Venue Provision. Id. ¶¶ 65–77. TCP now moves to dismiss both counts of Plaintiffs' complaint.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs," but it need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Claims that sound in fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (cleaned up). Thus, "averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." In re Google Assistant Priv. Litig., 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) (cleaned up) (citation omitted).[2]

## III.   DISCUSSION

Plaintiffs allege that TCP violated two provisions of the California Consumer Legal Remedies Act: California Civil Code sections 1770(a)(14) and 1770(a)(19). TCP offers

---

[2] The parties disagree as to (1) whether TCP adequately raised Rule 9(b)'s applicability in its opening brief and (2) whether Rule 9(b) applies to Plaintiffs' section 1770(a)(14) claim. For purposes of this motion, the Court assumes without deciding that Rule 9(b) applies to both of Plaintiffs' claims. See Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1395–96 (9th Cir. 1986) (courts may apply Rule 9(b) sua sponte).

three arguments that it believes warrant dismissal of both of Plaintiff's claims.  <u>First</u>, TCP asserts that the Court lacks jurisdiction over this case because Plaintiffs seek to overrule the arbitrator's decision as to venue.  <u>Second</u>, TCP contends that Plaintiffs lack standing to bring their claims.  <u>Third</u>, TCP argues (for the first time in its reply brief) that the litigation privilege requires dismissal of Plaintiffs' claims.  TCP then makes claim-specific arguments attacking each of Plaintiffs' claims.

### A.   Jurisdiction over Arbitrator's Decision

TCP's first argument for dismissal of Plaintiffs' claims is that Plaintiffs seek to override an arbitrator's decision—specifically, JAMS's decision as to the enforceability of the Arbitral Venue Provision.  As TCP sees it, when JAMS terminated the arbitration proceedings, it actually decided the validity of the Arbitral Venue Provision.  TCP thus argues that Plaintiffs' present effort to challenge that provision under the Consumer Legal Remedies Act would unlawfully disturb JAMS's decision.  Mot. (dkt. 27) at 7 ("JAMS's decision on the venue question is final and cannot be reviewed by this Court—either through a direct appeal of the decision, an action seeking to modify or vacate the award, or as here, a collateral action seeking to retroactively undermine the relevant provision of the arbitration agreement itself.").  Though this argument may have initial appeal, it does not hold water as applied to this case.

As to the general legal principle that federal courts usually cannot vacate, overrule, or otherwise reject arbitration awards, TCP is correct.  Parties may not turn to the courts to challenge an arbitrator's decision on the grounds that the decision was "arbitrary, harsh[,] inequitable," or "contrary to law."  <u>Griffith Co. v. San Diego Coll. for Women</u>, 45 Cal. 2d 501, 510 (1955).  Federal and state statutes permit limited judicial review of arbitration awards—for instance, "where the award was procured by corruption, fraud, or undue means."  9 U.S.C. §§ 10 (grounds to vacate arbitration awards), 11 (grounds to modify arbitration awards); <u>accord</u> Cal. Civ. Proc. Code § 1286.2.  Judicial review is usually only available to challenge an "entire contract or transaction," rather than to challenge "a single provision of the overall [] contract"—though the California Supreme Court has recognized

5

that parties may challenge "only a portion of [an] underlying contract" if "granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." Moncharsh v. Heily & Blase, 3 Cal. 4th 1, 32 (1992). On the whole, these restrictions on judicial review of arbitration awards ensure that the parties receive the benefit of their agreement to arbitrate by protecting arbitral finality. See id. at 10; Lindholm v. Galvin, 95 Cal. App. 3d 443, 450–51 (1979).

On the other hand, it is also clear that plaintiffs can collaterally challenge an arbitration agreement when doing so would not directly overturn an arbitrator's decision. Such collateral attacks are permissible so long as they are consistent with traditional rules of contract law. It is a "fundamental principle that arbitration is a matter of contract," and "arbitration agreements [are] on an equal footing with other contracts." Coinbase, Inc. v. Suski, 602 U.S. 143, 147–48 (2024) (citations omitted); accord Ramirez v. Charter Commc'ns, Inc., 16 Cal. 5th 478, 492 (2024) (California law). So "'generally applicable contract defenses' like fraud or unconscionability" apply equally to arbitration agreements. Viking River Cruises, Inc. v. Moriana, 596 U.S. 539, 650 (2022). And California law makes clear that actions brought under the Consumer Legal Remedies Act, which are by their nature collateral to the underlying contracts, are generally applicable:

> "The Consumers Legal Remedies Act, enacted in 1970, 'established a nonexclusive statutory remedy for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."'" "The self-declared purposes of the act are 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'" The Consumers Legal Remedies Act is supplemental to remedies available under other statutory and case law; moreover, actions brought under the act are governed exclusively by its own provisions. <u>Any consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by Civil Code section 1770 may bring an action against that person to recover actual damages, injunctive relief, restitution of property, punitive damages, and any other relief the court deems proper</u>.

Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th 1255, 1275 (2006) (emphasis added)

6

1  (cleaned up) (citations omitted).  It follows, then, that arbitration agreements and the
2  provisions therein are subject to the Consumer Legal Remedies Act just like any other
3  contract—even if that might jeopardize the general principle of arbitral finality.
4        TCP thus fails to bridge the gap from arbitral finality as a background rule to its
5  argument that Plaintiffs' claims in this case are not viable.  TCP does not plausibly assert
6  that JAMS has decided the questions at issue in this case—whether TCP's Arbitral Venue
7  Provision violates California Civil Code sections 1770(a)(14) and 1770(a)(19).  So there is
8  no risk that a judicial decision on Plaintiffs' claims would overrule anything JAMS did.
9        That alone distinguishes the cases on which TCP relies.  For instance, in Wallrich v.
10 Samsung Electronics America, Inc., the Seventh Circuit held that parties cannot ask a court
11 to compel arbitration when the arbitrator terminates arbitration proceedings.  106 F.4th
12 609, 613 (7th Cir. 2024).  The plaintiffs in Wallrich sought to directly overturn the
13 arbitrator's decision to terminate arbitration.  Plaintiffs in this case seek no such remedy.
14 TCP's other authorities—Lifescan, Inc. v. Premier Diabetic Services, Inc., 363 F.3d 1010
15 (9th Cir. 2004), and Bernal v. Kohl's Corp., No. 23-cv-1542, 2024 WL 4337452 (E.D.
16 Wisc. Sept. 13, 2024)—are distinguishable for the same reason, as both involved efforts to
17 compel arbitration and, in doing so, risked directly overturning arbitrators' decisions to
18 terminate arbitration.  Lifescan, 363 F.3d at 1013; Bernal, 2024 WL 4337452, at *4.
19 Moreover, in none of these three cases was there a statutory right at issue analogous to the
20 Consumer Legal Remedies Act.  See Moncharsh, 3 Cal. 4th at 32 (challenges to individual
21 provisions of arbitration agreements may be permitted if statutory rights are at issue).
22       TCP contends that the procedural posture of its authorities does not matter because
23 they stand for the broad proposition, which TCP would have this Court endorse, that any
24 collateral action that would "retroactively undermine" or "unwind" provisions of
25 arbitration agreements is forbidden.  Mot. at 7; Reply (dkt. 32) at 6.  That stretches
26 Wallrich, Lifescan, and Bernal beyond recognition.  Nothing in those cases suggests, let
27 alone holds, that collateral attacks on arbitration agreements are not viable merely because
28 they "undermine" an arbitrator's holding.  And TCP fails to identify a case that so holds.

7

The absence of any such authority makes sense.  As already explained, California law expressly contemplates collateral attacks on contracts that effectuate "unfair and deceptive business practices."  Cal. Civ. Code § 1770(a); see also Bardin, 136 Cal. App. 4th at 1275 ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by Civil Code section 1770 may bring an action against that person.").  In practice this may serve to limit arbitral finality, of course, just as it puts guardrails on parties' freedom to contract.  But "protection against unconscionable contracts[] has never been thought incompatible with a free and competitive market."  Perdue v. Crocker Nat'l Bank, 38 Cal. 3d 913, 943 (1985).  Nor does the Consumer Legal Remedies Act conflict with the high-level ideal of arbitral finality.

In short, the Consumer Legal Remedies Act applies generally to all contracts, and the mere fact that some actions brought under it (including this one) might affect arbitration agreements and undermine arbitrators' decisions does not justify dismissal.

### B.     Statutory Standing

TCP next challenges Plaintiffs' statutory standing to bring their Consumer Legal Remedies Act claims.  In support, TCP raises two main arguments: (1) that TCP's addition of the Arbitral Venue Provision did not cause Plaintiffs' harm, either because Plaintiffs had failed to establish the existence of an underlying arbitration agreement or because Plaintiffs' arbitration demands facially violated the terms of the arbitration agreement, and (2) that being deprived of the ability to arbitrate is not a cognizable harm under the statute.  Mot. at 8–9.  TCP then raises a third, tangential challenge to Plaintiffs' statutory standing—that Plaintiffs did not each file a separate affidavit asserting that TCP does business in Alameda County.  Id. at 9–10.  TCP's standing arguments all fail.

#### 1.     Causation

Causation is a requirement for a Consumer Legal Remedies Act claim.  Plaintiffs must allege that they have "'suffer[ed] any damage as a result of the use or employment' of a proscribed method, act, or practice."  Buckland v. Threshold Enter., Ltd., 155 Cal.

8

App. 4th 798, 809 (2007) (emphasis in original) (quoting Cal. Civ. Code § 1780(a)), disapproved of on other grounds by Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 337 (2011). Thus, plaintiffs must "show not only that a defendant's conduct was deceptive but that the deception caused them harm." Mass. Mut. Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1292 (2002).

TCP asserts that causation is lacking because JAMS was unable to establish the existence of an arbitration agreement at all and, relatedly, because Plaintiffs' lawyers brought an arbitration demand that facially violated the terms of the parties' arbitration agreement. TCP contends that these reasons, not the Arbitral Venue Provision, are why Plaintiffs were unable to pursue their claims in arbitration.

But TCP misapprehends the full scope of Plaintiffs' alleged injury. Plaintiffs allege that they have been harmed by being forced to spend time and money to arbitrate in a forum that TCP never intended to participate in—indeed, a forum that TCP unilaterally deprived Plaintiffs access to. The California Supreme Court clearly holds that "a consumer who has had to expend transaction costs in order to avoid [an] unconscionable term has suffered 'damage' … and therefore has standing to sue." Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 636 (2009). Plaintiffs allege that they were harmed by spending time and money in arbitration to challenge the Arbitral Venue Provision, FAC ¶¶ 75, 82; they would not have had to do so without the provision itself.[3] That is sufficient to survive a motion to dismiss.

That said, Plaintiffs' alleged harm of being deprived of the right to arbitrate would survive a causation challenge in any case. To be sure, JAMS did explain that it was terminating arbitration in part because there was an unresolved dispute "over whether an arbitration agreement exists as to any Claimant." JAMS Letter at 2. In context, though,

---

[3] TCP's remark that any "costs were almost certainly undertaken by [Plaintiffs'] attorneys, who almost certainly did not bill [Plaintiffs] for the arbitration fees and related attorney fees," Reply at 7, is speculative and likely irrelevant. Neither Meyer nor any other California authority contemplates such an argument. And it would be bizarre, to say the least, for plaintiff's counsel's billing practices to be a determinative factor in the statutory standing analysis.

9

this dispute arose because TCP argued to JAMS that Plaintiffs had not established that they had made a purchase on TCP's website (where they would have assented to an arbitration agreement). Id. JAMS found that "a facial review of the documents submitted to date sheds no light on the issue" but clarified that it would "resume administration" of the arbitration if the parties agreed or if a court ordered them to arbitrate. Id. This matters for Plaintiffs' statutory standing because Plaintiffs allege that they did, in fact, purchase products from TCP's website. See FAC ¶¶ 33–37. At this stage, the Court must accept Plaintiffs' well-pleaded allegations as true. In doing so, the Court assumes that Plaintiffs can show the existence of a valid arbitration agreement and thereby establish that the Arbitral Venue Provision—not any other dispute about arbitrability—was the sole relevant barrier to their effort to arbitrate before JAMS.[4]

### 2. Cognizable Harm

TCP's next argument is targeted at Plaintiffs' claim that they have been harmed by being deprived the ability to arbitrate. TCP contends that this claim is not viable because "[h]aving to bring claims in court instead of arbitration is not a 'harm.'" Mot. at 9. Indeed, TCP accuses Plaintiffs of "essentially arguing that the state and federal courts are incapable of administering justice and only arbitrations are capable of doing so, and only where conducted en masse such that the merits of the claims are vastly overshadowed by ruinous arbitration fees being imposed upon the defendant." Id. at 9 n.7; see also Reply at 8 ("Plaintiffs cannot be harmed by having the ability to go back and file a lawsuit.").

TCP's argument fundamentally misunderstands Plaintiffs' claim, the role of arbitration in today's legal society, and the Consumer Legal Remedies Act. Plaintiffs do not allege that they are harmed by needing to go to court; they allege that they are harmed by being deprived of a remedy that TCP purported to offer—arbitration. See FAC ¶¶ 75, 82 ("Plaintiffs and members of the Class were harmed … because they have been deprived

---

[4] TCP's attempt to blame Plaintiffs for not establishing the existence of a valid arbitration agreement, see Mot. at 9, does not land for the same reasons. And to the extent TCP argues that Plaintiffs erred by bringing arbitration demands in the wrong forum, that begs the question whether the Arbitral Venue Provision is even enforceable against Plaintiffs.

of the ability to arbitrate their claims with JAMS, which [TCP] represented they had a right to do."). The benefits of arbitration over litigation in court are well established: "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 348 (2011) (citation omitted); see also Epic Sys. Corp. v. Lewis, 584 U.S. 497, 505 (2018) (advantages of arbitration include "the promise of quicker, more informal, and often cheaper resolutions for everyone involved"). Plaintiffs and TCP contractually agreed to a conflict-resolution framework that would offer these benefits, and Plaintiffs adequately allege that TCP has refused to hold up its end of the bargain. The final piece of all this is that, in passing the Consumer Legal Remedies Act, California recognized that the deprivation of "rights, remedies, or obligations" that were promised as part of a transaction is an "unfair or deceptive act[] or practice[]" that consumers are entitled to relief against. Cal. Civ. Code § 1770(a)(14); see also id. § 1780(a) (granting private cause of action to "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by section 1770" (emphasis added)); Meyer, 45 Cal. 4th at 640 (distinguishing the statutory phrase "any damage" from "actual damages"). Arbitration is surely a "remedy" under the statutory text.

None of this remotely means or even implies that federal and state courts are incapable of fairly adjudicating disputes like Plaintiffs'. TCP's impassioned defense of the judicial system is nothing more than tilting at windmills. Plaintiffs' harm is not that they must go to court; it is that they have been deprived of arbitration—a forum which the California legislature, federal and state courts, and Plaintiffs all recognize provides certain benefits over litigation. If Plaintiffs' allegations are correct that TCP falsely represented that Plaintiffs could avail themselves of those benefits, they have standing to sue.

### 3. Transactional Facts

TCP's final standing-related argument is that Plaintiffs failed to file an affidavit stating that the action was commenced in a proper county—that is, a county in which TCP resides, has its principal place of business, or is doing business, or the county in which the

11

transaction or a substantial portion thereof occurred. Mot. at 9 (citing Cal. Civ. Code § 1780(d). Though one plaintiff, Aja Beckford, filed such an affidavit, <u>see</u> Beckford Decl., TCP contends that "affidavits are required from each Plaintiff." Mot. at 10. TCP appears to have conjured that requirement from thin air. Plus, Beckford's affidavit establishes that venue in the Northern District is proper <u>both</u> because Beckford purchased goods from TCP online for pick-up in Alameda County <u>and</u> because TCP operates a retail store in Alameda County. Beckford Decl. ¶ 4. Beckford's affidavit thus satisfies section 1780(d) for all Plaintiffs, as it establishes that TCP "is doing business" in Alameda County.

### C.     Litigation Privilege

TCP's third challenge to Plaintiffs' entire complaint comes for the first time in its reply brief. TCP contends that the litigation privilege, <u>see</u> Cal. Civ. Code § 47(b), requires dismissal of Plaintiffs' claims. But because this argument was raised for the first time in TCP's reply brief, it is waived for purposes of this motion. See <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007).

### D.     Civil Code Section 1770(a)(14)

TCP raises three challenges specifically against Plaintiffs' section 1770(a)(14) claim. This provision targets representations "that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." <u>First</u>, TCP argues that "no Plaintiff alleges they relied on the [Arbitral] Venue Provision when purchasing from TCP." Mot. at 10. <u>Second</u>, TCP contends that "Plaintiffs do not allege the requisite collateral misrepresentation at odds with the Terms of the parties' agreement outside the Terms' four corners." <u>Id.</u> at 11. <u>Third</u>, TCP asserts that "Plaintiffs fail to allege that any existing law prohibits the [Arbitral] Venue Provision." <u>Id.</u> None of these is reason to dismiss Plaintiffs' section 1770(a)(14) claim.

**Reliance.** TCP takes too narrow a view of reliance. Of course a plaintiff bringing suit under the Consumer Legal Remedies Act must allege "reliance on [a] misrepresentation." <u>In re Sony PS3 Other OS Litig.</u>, 551 F. App'x 916, 920 (9th Cir. 2014) (citing <u>Marolda v. Symantec Corp.</u>, 672 F. Supp. 2d 922, 1002–03 (N.D. Cal.

12

2009)). But reliance means only "that without the misrepresentation [the plaintiff] would not have acted as she did," not necessarily that reliance caused the underlying transaction. Marolda, 672 F. Supp. 2d at 1003 (citing Caro v. Proctor & Gamble Co., 18 Cal. App. 4th 644, 668 (1993)). Here, for instance, Plaintiffs allege that when they brought arbitration demands before JAMS, they did so in reliance on TCP's representation that their "transactions would be governed by the Terms, including its arbitration agreement designating JAMS as the forum for resolving any claims by Plaintiffs and members of the Class relating to those transactions." FAC ¶ 80; see also 2022 Terms at 6. That is sufficient to allege reliance.

TCP attempts to paint Plaintiffs and their counsel as wrongheaded for relying on "a general impression they got from the arbitration agreement instead of its plain language" when bringing their arbitration demands. Reply at 9. But TCP does not convincingly explain how the plain language of the 2022 Terms to which Plaintiffs agreed prohibited them from pursuing arbitration in the manner they did. To the contrary, the 2022 Terms support Plaintiffs' reading. See, e.g., 2022 Terms at 6 ("To the fullest extent permitted by applicable law, any and all controversies, disputes, demands, counts, claims, or causes of action … between you and [TCP] shall exclusively be settled through binding and confidential arbitration … "). TCP's reliance on the fact that the Terms stated that JAMS would conduct arbitration "as modified by this agreement to arbitrate," 2022 Terms at 6, is irrelevant because no other provision in those Terms states or suggests that they modified JAMS's procedures to preclude Plaintiffs' efforts to arbitrate. TCP tries to have its cake and eat it too—incorporating arbitration agreements into its Terms but insisting that the same provisions do not mean what they say as applied to TCP. That it cannot do. Plaintiffs have adequately alleged reliance on TCP's representations in its 2022 Terms.

**Collateral misrepresentation and contrary law.** TCP's remaining challenges to Plaintiffs' section 1770(a)(14) claim invent legal requirements that do not, in fact, exist. TCP points to a California appellate court decision, Gray v. Dignity Health, which rejected a section 1770(a)(14) claim brought by a hospital patient who alleged that the contract he

13

signed with the hospital did not state that the hospital would bill him an additional emergency room charge. 70 Cal. App. 5th 225, 235, 245 (2021). TCP reads Gray as establishing that a plaintiff must "allege [a] collateral oral misrepresentation … that is at odds with the terms" of the parties' contract and "allege that [the contract] contains [a] term prohibited by law." Id. at 245. Not so. Gray simply stands for the proposition that, where a plaintiff does not allege a misrepresentation in the terms of the contract itself, they must allege some other misrepresentation or basis for liability under section 1770(a)(14). That is unsurprising: the statute prohibits any representation "that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Cal. Civ. Code § 1770(a)(14). Because Plaintiffs allege a misrepresentation that is part of the express Terms they agreed to, they have adequately alleged a claim under the statute and do not need to allege additional misrepresentations.

### E.   Civil Code Section 1770(a)(19)

TCP next challenges Plaintiffs' 1770(a)(19) claim, which alleges that TCP inserted an unconscionable provision (namely, the Arbitral Venue Provision) into its Terms. California law requires that a provision be "both procedurally and substantively unconscionable." Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing Almendariz v. Found. Health Psychare Servs., Inc., 24 Cal. 4th 83, 89 (2000)). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required … and vice versa." Almendariz, 24 Cal. 4th at 114. "In evaluating an unconscionability challenge to a [] provision under California law, a court must be able to interpret that provision in the context of the agreement as a whole." Bielski v. Coinbase, Inc., 87 F.4th 1003, 1012 (9th Cir. 2023).

TCP charges that Plaintiffs fail to allege either procedural or substantive unconscionability. But Plaintiffs have adequately alleged both, so dismissal of Plaintiffs' section 1770(a)(19) claim is not warranted.

#### 1.   Procedural Unconscionability

"Procedural unconscionability focuses on the level of oppression or surprise in the

14

negotiation of the agreement due to unequal bargaining power." Fierro v. Cap. One, N.A., 656 F. Supp. 3d 1121, 1130 (S.D. Cal. 2023). Plaintiffs allege that the Arbitral Venue Provision is procedurally unconscionable for two reasons: (1) it is an adhesion contract and (2) it "is surprising that [TCP] would designate JAMS as its chosen arbitral forum and then include a provision that is supposedly material to the company which violates JAMS's Consumer Minimum Standards." FAC ¶ 71. And as Plaintiffs point out, the Arbitral Venue Provision was added to TCP's Terms only after they made their purchases. Opp. (dkt. 30) at 13–14.

TCP offers two main reasons why the Arbitral Venue Provision is not procedurally unconscionable. <u>First</u>, they point out that for "non-essential recreational goods" like children's clothes, particularly where alternative sources are available, California courts hold that contracts of adhesion are not procedurally unconscionable. Mot. at 12–13. <u>Second</u>, they argue that the 2023 Terms clearly disclose that they modify JAMS's Consumer Minimum Standards. <u>Id.</u> Neither argument is sound.

Regarding TCP's first argument, about how children's clothes are non-essential and can be purchased elsewhere, TCP misses the mark.[5] Consider <u>Belton v. Comcast Cable Holdings, LLC</u>, where the court explained procedural unconscionability as follows: "The availability of alternative sources from which to obtain the desired service defeats any claim of oppression, <u>because the consumer has a meaningful choice</u>. Moreover, when the challenged term is in a contract concerning a nonessential recreational activity, <u>the consumer always has the option of simply forgoing the activity</u>." 151 Cal. App. 4th 1224, 1245 (2007) (citations omitted) (emphasis added). Here, though, TCP added the Arbitral

---

[5] TCP also overstates California law. Although some federal courts have held that contracts for non-essential recreational goods or services can never be procedurally unconscionable, see e.g., Pokrass v. The DirecTV Grp., Inc., No. 07-cv-423-VAP, 2008 WL 2897084, at *6–8 (C.D. Cal. July 14, 2008), California courts are clear that whether a consumer can obtain goods or services elsewhere—or whether goods or services are essential as opposed to recreational—is only part of the analysis. See Lhotka v. Geographic Expeditions, Inc., 181 Cal. App. 4th 816, 822–24 (2010) ("While the nonessential nature of recreational activities is a factor to be taken into account in assessing whether a contract is oppressive, it is not necessarily the dispositive factor.").

15

Venue Provision to its Terms after Plaintiffs had already purchased TCP's products. Plaintiffs, who do not appear to be time travelers, could not unwind that transaction to avoid an unconscionable contract provision added after the fact. In other words, Plaintiffs had no meaningful choice—either to choose to buy from a competitor or to forgo the purchase altogether.

To be sure, courts must evaluate "whether a contract is unconscionable [at] the moment when it is entered into by both parties—not whether it is unconscionable in light of subsequent events." Am. Software, Inc. v. Ali, 46 Cal. App. 4th 1386, 1391 (1996). TCP argues that this precludes liability, because the Terms were amended after Plaintiffs made their purchases. But Plaintiffs allege that the 2023 Terms—which incorporate the Arbitral Venue Provision for the first time—were unconscionable when drafted. Opp. at 14 ("the element of surprise was TCP's unilateral decision to modify its terms and add the Arbitral Venue Provision"). A party cannot skirt unconscionability by drafting a legally sound contract and then unilaterally amending the contract to add a new, unconscionable term.

Regarding TCP's second argument, that the 2023 Terms clearly disclose that they modify JAMS's Consumer Minimum Standards, TCP overreaches. The 2023 Terms actually state as follows:

> The arbitration shall be conducted … pursuant to the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the "JAMS Rules") and as modified by this agreement to arbitrate. The JAMS Rules, including instructions for bringing arbitration, are available at its website … . The Minimum Standards are available at [hyperlink] or by calling 1-800-352-5267.

2023 Terms at 6. A perfectly fair reading of this provision is that the JAMS Rules and Consumer Minimum Standards are different and that the 2023 terms amend the Rules, but not the Minimum Standards. In other words, a conflict would remain between the Arbitral Venue Provision and the JAMS Consumer Minimum Standards.

Because Plaintiffs have adequately alleged that the Arbitral Venue Provision was a contract of adhesion that they could not avoid, and because that provision conflicts with

16

JAMS's Consumer Minimum Standards under a viable reading of the 2023 Terms, Plaintiffs have adequately alleged procedural unconscionability.

### 2. Substantive Unconscionability

"Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." Samaniego v. Empire Today LLC, 205 Cal. App. 4th 1138, 1147 (2012). Plaintiffs allege that the Arbitral Venue Provision is substantively unconscionable "because it involves terms that are so one-sided that they shock the conscience, and it imposes harsh and oppressive terms on consumers." FAC ¶ 72. The harshness of this provision, according to Plaintiffs, is both that JAMS changed the terms of its arbitration agreement after Plaintiffs had already filed arbitration demands and that the new provision would require Plaintiffs to travel from California to New Jersey to arbitrate their claims. Opp. at 15.

TCP makes one main argument against substantive unconscionability—that its deprivation of Plaintiffs' ability to arbitrate their claims with JAMS is not an overly harsh effect. Mot. at 14–15. But as explained above, this is not a case about whether arbitration or the federal courts are a superior forum for resolving claims like those Plaintiffs brought. Rather, the question is whether it is harsh, oppressive, or one-sided for TCP to unilaterally add a new venue provision after Plaintiffs filed arbitration demands knowing full well that the venue provision would require Plaintiffs to either abandon their arbitration demands or travel across the country to pursue their claims.[6]

Though TCP offers several additional arguments, they are plainly meritless. First, TCP contends that Plaintiffs do not even allege substantive unconscionability because

---

[6] In its reply brief, TCP mentions that the JAMS Rules permit the arbitrator to permit an arbitration hearing to take place entirely or in part virtually by way of a conference call, videoconference, or other means. Reply at 14. But JAMS itself held that the "requirement to hold the arbitration in Hudson County, New Jersey, violates the 2009 Minimum Standards for all Claimants who do not reside in [that county], and it potentially violates the 2024 Minimum Standards for the same set of Claimants." JAMS Termination Letter at 3. JAMS's conclusion as to the conflict between the Arbitral Venue Provision and its own Consumer Minimum Standards raises at least an issue of fact as to whether a virtual option would be feasible for Plaintiffs.

17

venue provisions relate only to procedural unconscionability. Mot. at 14. Yet the very case it cites for this proposition states that "[s]ubstantive unconscionability may be shown" as to venue provisions. Murrey v. Superior Court, 87 Cal. App. 5th 1223, 1247 (2023) (citation omitted). Second, TCP asserts that the conflict between the Arbitral Venue Provision and the Consumer Minimum Standards is "a procedural modification permitted by the JAMS rules." Mot. at 15. JAMS itself concluded otherwise, however. See JAMS Termination Letter at 3. Third, TCP argues that the Arbitral Venue Provision "applies equally to both TCP and consumers," so there is no unilateral obligation. Plaintiffs have adequately alleged, though, that TCP wields its position as the drafting party with a self-described "right to unilaterally modify the Terms," Reply at 13, to its benefit by pushing some parties into arbitration and pulling others out of it. See FAC ¶¶ 9–11 & n.1, 14. So even though the Arbitral Venue Provision appears to impose bilateral requirements on TCP and Plaintiffs, the entirety of TCP's Terms (and TCP's course of conduct in this case) functionally grants TCP unilateral authority to decide which claims to arbitrate and which claims not to. See Bielski, 87 F.4th at 1012 (courts must "interpret [a contract] provision in the context of the agreement as a whole").

Plaintiffs have adequately alleged that TCP's addition of the Arbitral Venue Provision was substantively unconscionable because as enacted it imposes a harsh result on Plaintiffs and operates to the one-sided benefit of TCP.

**IV.  CONCLUSION**

For the foregoing reasons, the Court **DENIES** TCP's motion to dismiss

**IT IS SO ORDERED.**

Dated: February 28, 2025

CHARLES R. BREYER
United States District Judge

18