**LYNCH CARPENTER, LLP**
Todd D. Carpenter (SBN 234464)
 *todd@lcllp.com*
Matthew J. Zevin (SBN 170736)
 *mattz@lcllp.com*
Connor J. Porzio (SBN 351998)
 *connor@lcllp.com*
9171 Towne Centre Drive
San Diego, CA 92122
Telephone:    (619) 762-1910

**KELLER POSTMAN LLC**
Warren D. Postman (SBN 330869)
 *wdp@kellerpostman.com*
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone:    (312) 741-5220

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| AJA BECKFORD, ZACHARY CUBAS, CHRISTINA LABAJO, and ALEXUS WALLACE, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>THE CHILDREN'S PLACE, INC., a Delaware corporation,<br><br>          Defendant. | Case No. 3:24-cv-06468-CRB<br><br>**OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:       February 27, 2026<br>Time:      10:00 a.m.<br>Location:  Video Conference (Zoom)<br>Judge:    Hon. Charles R. Breyer<br><br>Trail Date: None Set |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................................... 1

II.  RELEVANT FACTS AND PROCEDURAL BACKGROUND ..................................................... 1

III.  LEGAL STANDARD ......................................................................................................... 3

IV.  ARGUMENT ................................................................................................................... 3

    A.  The CLRA Applies to Plaintiffs' Claims ................................................................ 3

        1.  Plaintiffs' section 1770(a)(14) claim is based on a deceptive act that occurred before Plaintiffs' purchases ............................................................ 4

        2.  TCP's timing argument does not apply to Plaintiffs' section 1770(a)(19) claim ............................................................................................................ 6

    B.  The Litigation Privilege Does Not Apply to Plaintiffs' Claims ............................ 9

        1.  The litigation privilege does not apply to Plaintiffs' section 1770(a)(14) claim ............................................................................................................ 10

        2.  The litigation privilege does not apply to Plaintiffs' section 1770(a)(19) claim ............................................................................................................ 12

V.  CONCLUSION ............................................................................................................... 16

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS        Case No. 3:24-cv-06468-CRB

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Action Apartment Assn., Inc. v. City of Santa Monica*,
41 Cal. 4th 1232 (2007)......................................................................................................... 10, 12

*American Products. Co., Inc. v. Law Offices of Gellar, Steward & Foley, LLP*,
134 Cal. App. 4th 1332 (2005)................................................................................................... 14

*Bassi v. Bassi*,
101 Cal. App. 5th 1080 (2024)................................................................................................... 13

*Brown v. Rumsfeld*,
211 F.R.D. 601 (N.D. Cal. 2002) .............................................................................................. 16

*Daugherty v. Am. Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006)....................................................................................................... 7

*Durkee v. Ford Motor Co.*,
No. C 14-0617 PJH, 2014 WL 4352184 (N.D. Cal. Sep. 2, 2014) ..................................... passim

*Durrell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010)..................................................................................................... 6

*Falcon v. Long Beach Genetics, Inc.*,
224 Cal. App. 4th 1263 (2014)................................................................................................... 15

*Ferdik v. Bonzelet*,
963 F.2d 1258 (9th Cir. 1992).................................................................................................... 16

*Graham-Sult v. Clainos*,
756 F.3d 724 (9th Cir. 2014)............................................................................................... passim

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990)...................................................................................................... 3

*Harlan v. Roadtrek Motorhomes, Inc.*,
No. 07-CV-0686 IEG (BLM), 2009 WL 928309 (S.D. Cal. Apr. 2, 2009) ................................. 7

*Hawran v. Hixson*,
209 Cal. App. 4th 256 (2012)..................................................................................................... 10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
639 F. Supp. 3d 944 (N.D. Cal. 2022) ....................................................................................... 14

*In re Sony PS3 Other OS Litig.*,
551 F. App'x 916 (9th Cir. 2014) ................................................................................................. 8

*King v. Atiyeh*,
814 F.2d 565 (9th Cir. 1987)...................................................................................................... 16

*Koarova v. National Credit Acceptance, Inc.*,
175 Cal. App. 4th 324 (2009)..................................................................................................... 13

i

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

**Cases (cont.)**

*Kotlarsz v. Integrity Vehicle Services, Inc.*,
No. 8:24-cv-00569-FWS-JDE, 2024 WL 4800695 (C.D. Cal. Sep. 3, 2024)................................ 14, 15

*Lerette v. Dean Winter Org., Inc.*,
60 Cal. App. 3d 573 (1976)............................................................................................................ 14

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) ............................................................................................. 4

*Moore v. Apple, Inc.*,
73 F. Supp. 3d 1191 (N.D. Cal. 2014) ................................................................................... 4, 6, 8

*People ex rel. Alzayat v. Hebb*,
18 Cal. App. 5th 801 (2017)........................................................................................................... 13

*Pollock v. University of Southern California*,
112 Cal. App. 4th 1416 (2003)....................................................................................................... 14

*Ramirez v. Cnty. of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015)........................................................................................................ 16

*Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*,
506 F. Supp. 3d 847 (N.D. Cal. 2020) ............................................................................................. 3

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006)..................................................................................................... 9, 10, 14

*Silberg v. Anderson*,
50 Cal. 3d 205 (1990)..................................................................................................................... 15

*Strawn v. Morris, Polich & Purdy, LLP*,
30 Cal. App. 5th 1087 (2019)......................................................................................................... 15

*Usher v. City of L.A.*,
828 F.2d 556 (9th Cir. 1987)............................................................................................................ 3

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007)............................................................................................................ 1

**Statutes**

Cal. Civ. Code § 1760..................................................................................................................... 4, 7

Cal. Civ. Code § 1761(e) ................................................................................................................ 7, 8

Cal. Civ. Code § 1770(a) ..................................................................................................................... 3

Cal. Civ. Code § 1770(a)(14)..................................................................................................... passim

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

**Statutes (cont.)**

Cal. Civ. Code § 1770(a)(19) ............................................................................................. passim

Cal. Civ. Code § 1780(a) ........................................................................................................ 3

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS          Case No. 3:24-cv-06468-CRB

## I.     <u>INTRODUCTION</u>

TCP's[1] Motion for Judgment on the Pleadings (Dkt. No. 56) ("Motion") should be denied. This is TCP's *third* request to have this case dismissed on the pleadings. For two main reasons, it should fare no better than TCP's previous efforts. Dkt. Nos. 38, 50.

*First*, TCP's argument that Plaintiffs[2] cannot maintain a claim under the Consumer Legal Remedies Act ("CLRA") based on something that happened after their purchases is effectively a rehash of TCP's previous argument that Plaintiffs failed to plead reliance. The Court already rejected that argument because it is factually incorrect, and it misconstrues the gravamen of Plaintiffs' claims. Plaintiffs' claim under CLRA section 1770(a)(14) is based exclusively on a misrepresentation that TCP made *at or before the time* of Plaintiffs' purchases—namely, that the parties had a bilateral obligation to resolve any disputes through binding arbitration with JAMS. TCP's timing argument is inapplicable to Plaintiffs' section 1770(a)(19) claim because that claim does not have a reliance element, and because the CLRA broadly covers unfair acts taken as part of the subsequent performance of a consumer agreement, even if those acts occur after the underlying sale.

*Second*, TCP's argument concerning the litigation privilege fails because it is based on the strawman arguments that "Plaintiffs challenge communicative conduct" made in litigation, (Dkt. No. 56 at 8), and that "TCP's advocacy to JAMS was the cause of their alleged harm." *Id.* at 11. Neither assertion is true, and TCP fails to cite any authority applying the litigation privilege to facts and claims even remotely analogous to this case. The Court should reject TCP's request for such a novel application of the privilege here.[3]

## II.    <u>RELEVANT FACTS AND PROCEDURAL BACKGROUND</u>

TCP is a large national retailer of mostly children's clothes. First Amended Complaint, Dkt. No. 21, ("FAC") ¶ 1. Consumers who purchase items from TCP's website must agree to the Terms and Conditions ("Terms") on its website which, for years, have required that any disputes between TCP and its customers be resolved through binding, individual arbitration before JAMS. *Id.* at ¶¶ 25-28.

---

[1] TCP is defendant The Children's Place, Inc.

[2] Plaintiffs are Aja Beckford, Zachary Cubas, Christina Labajo, and Alexus Wallace.

[3] TCP previously attempted to raise the litigation privilege in connection with its motion to dismiss. Dkt. No. 38 at 12. The Court held that TCP waived the argument because it was only first raised in TCP's reply brief. *Id.* (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)).

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS          Case No. 3:24-cv-06468-CRB

On August 15, 2023, Plaintiffs Cubas and Wallace were two of around 1,352 consumers who filed individual arbitration demands with JAMS, alleging that TCP engages in a false and illegal price-discounting scheme. *Id.* at ¶ 30; *see also id.* at ¶¶ 32-33. These demands followed litigation of similar claims in which TCP had compelled other consumers to arbitration. *Id.* at ¶¶ 6-11. The underlying purchases upon which their claims were based occurred on February 3, 2023, and November 9, 2022, respectively (*id.* at ¶¶ 35, 37), and the arbitration demands were filed pursuant to TCP's 2022 Terms in effect at the time. FAC ¶ 29, Exs. B & C.

On or about September 10, 2023, almost a month after Plaintiffs Cubas and Wallace served their arbitration demands, TCP changed its Terms to, *inter alia*, include an Arbitral Venue Provision, which would require California consumers to travel to Hudson County, New Jersey for their arbitrations. FAC ¶¶ 12, 29, Ex. A. At that time, TCP knew Plaintiffs Cubas and Wallace had already filed arbitration demands under its old Terms, and it knew that Plaintiffs' counsel represented roughly 50,000 additional consumers who were prepared to file individual arbitration demands against TCP pursuant to the same Terms. Dkt. No. 27-1 ("Cardon Decl."), Ex. 2. At the same time, TCP also knew the Arbitral Venue Provision violated JAMS's Consumer Minimum Standards, and it knew JAMS would decline to administer any arbitration that fell short of those standards. FAC ¶ 13. Thus, by adding the Arbitral Venue Provision to its Terms, TCP effectively gave itself discretion to unilaterally decide whether it would proceed with over 50,000 known and accrued claims in arbitration, despite the Terms, which promised a bilateral and binding agreement to arbitrate individual disputes before JAMS. *Id.*; *see also id.* at ¶ 29, Exs. B & C.

Three days later, TCP agreed to a standstill agreement so the parties could attempt to resolve the pending and imminent individual arbitration demands. FAC ¶ 41. Those efforts were ultimately unsuccessful, and the standstill expired on April 30, 2024. *Id.* The next day, Plaintiffs Beckford and Labajo filed their demands for arbitration with JAMS alongside another 1,368 consumers, all of whom asserted similar false discount claims against TCP. *Id.* at ¶ 42. Plaintiff Beckford's underlying purchase was on July 20, 2023, and Plaintiff Labajo's purchase was on December 20, 2022. FAC ¶¶ 34, 36. Accordingly, they filed demands pursuant to the Terms governing their purchases, which did not include the Arbitral Venue Provision. *Id.* at ¶¶ 27-31.

2

In response to being served with additional arbitration demands and the expiration of the standstill, on May 1, 2024, TCP advised JAMS that it believed the new Terms with the Arbitral Venue Provision should apply to all pending arbitrations. FAC ¶ 43, Ex. D. It also claimed the Arbitral Venue Provision was "material to [TCP]," and that it would not waive the provision. *Id.* at ¶¶ 44-45.

Thereafter, JAMS made two administrative findings: first, it found the Arbitral Venue Provision violates its Consumer Minimum Standards, effective July 15, 2009. *Id.* at ¶¶ 47-48, Ex. E at 3-4. Second, JAMS informed the parties that, if the Consumer Minimum Standards apply, and if TCP refused to abide by those standards, JAMS would decline to administer any arbitration unless the consumer waives the Consumer Minimum Standards. *Id.* at ¶ 49, Ex. E at 24. To date, JAMS has declined to administer the arbitrations against TCP, including because TCP has not rescinded its refusal to waive the Arbitral Venue Provision. *Id.* at ¶ 50.

## III.   <u>LEGAL STANDARD</u>

A motion for judgment on the pleadings is only proper "when the moving party clearly establishes on the face of the pleadings no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Robert W. Fountain, Inc. v. Citizens Ins. Co. of Am.*, 506 F. Supp. 3d 847, 851 (N.D. Cal. 2020) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990)). The Court "'must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.'" *Id.* (quoting *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987)).

## IV.   <u>ARGUMENT</u>

### A.      The CLRA Applies to Plaintiffs' Claims

The CLRA provides standing to any consumer "who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared unlawful by Section 1770." Cal. Civ. Code § 1780(a). The CLRA proscribes numerous "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer...." Cal. Civ. Code § 1770(a). As relevant here, it prohibits a business from representing "that a transaction confers or involves rights, remedies, or obligations that it does not have ...." Cal. Civ. Code § 1770(a)(14). It further prohibits a business from "[i]nserting an unconscionable provision in

3

[a] contract." Cal. Civ. Code § 1770(a)(19). The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

TCP argues that the CLRA does not apply to either of Plaintiffs' claims because "CLRA claims cannot apply to 'unfair or deceptive practices that occur *after* the sale or lease has occurred.'" Dkt. No. 56 at 8 (quoting *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014)). The Court should reject that argument for two reasons. First, *Moore's* holding about the timing of an unfair or deceptive act is inapplicable to Plaintiffs' claims because the Court has already determined that Plaintiffs sufficiently alleged their reliance on misrepresentations in the 2022 Terms that were in effect at the time of their transactions. Dkt. No. 38 at 12-13. Second, the timing issue does not apply to Plaintiffs' section 1770(a)(19) claim because reliance is not an element of that claim, and because liability under the CLRA extends to acts done in the performance of a consumer agreement, even if those acts post-date the initial purchase transaction.

### 1. Plaintiffs' section 1770(a)(14) claim is based on a deceptive act that occurred before Plaintiffs' purchases

The Court should reject TCP's timing argument with respect to Plaintiffs' section 1770(a)(14) claim for the same reason it denied TCP's reliance argument in its Motion to Dismiss. By focusing exclusively on the fact that the disputed Arbitral Venue Provision was added after Plaintiffs' purchases, TCP once again "takes too narrow a view of reliance" because "reliance only means 'that without the misrepresentation [the plaintiff] would not have acted as she did,' not necessarily that reliance caused the underlying transaction." Dkt. No. 38 at 12-13 (citing *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009)). As the Court previously recognized, "Plaintiffs allege that when they brought arbitration demands before JAMS they did so in reliance on TCP's representation that their 'transactions would be governed by the [2022] Terms, including its arbitration agreement designating JAMS as the forum for resolving any claims by Plaintiffs and members of the Class relating to those transactions.'" *Id.* at 13 (quoting FAC ¶ 80). According to the Court, that allegation "is sufficient to allege reliance" (*id.*), and the same analysis defeats TCP's timing argument here.

TCP erroneously suggests that "Plaintiffs do not claim that, at the time they made their purchases, they lacked a right or remedy to arbitrate or that TCP did not have an obligation to arbitrate." Dkt. No. 56

at 14. But that is precisely what Plaintiffs allege. They allege that *at the time* TCP "sold products to Plaintiffs and members of the Class, it represented to them that those transactions would be governed by the [2022] Terms, including its arbitration agreement designating JAMS as the forum for resolving any claims . . . relating to those transactions." FAC ¶ 80. It also represented that TCP "had an obligation to arbitrate with JAMS." *Id.* Plaintiffs further allege that "neither of these representations made by [TCP] was true." *Id.* at ¶ 81. The fair inference from these allegations, to which Plaintiffs are entitled, is that TCP's representations in the 2022 Terms about arbitration were not true at the time they were made. In other words, Plaintiffs allege that at the time of their purchases, TCP did *not* intend to comply with the arbitration provision in its 2022 Terms. Plaintiffs' claims are therefore "based on the truth of the representation at the time of the transactions." Dkt. No. 56 at 14.

This is confirmed by the alleged harm Plaintiffs suffered because of TCP's actions, which materialized *before* TCP added the Arbitral Venue Provision. FAC at ¶¶ 80-82; *see also id.* at ¶ 83 ("The harm to Plaintiffs and members of the Class was the direct and proximate result of [TCP's] violation of Cal. Civ. Code § 1770(a)(14) because they *would not have attempted to arbitrate their claims* against [TCP] if it had not represented to Plaintiffs . . . that they would have the right to arbitrate with JAMS, and that the company had an obligation to arbitrate with JAMS.") (emphasis added). Critically, Plaintiffs Cubas and Wallace filed arbitration demands with JAMS on August 15, 2023, well before TCP added the Arbitral Venue Provision on September 10, 2023. FAC ¶¶ 30, 32-33. Plaintiffs' counsel also notified TCP that they represented roughly 50,000 additional consumers, including Plaintiffs Beckford and Labajo, who intended to file arbitration demands under TCP's 2022 Terms, thereby demonstrating their reliance and harm before TCP added the Arbitral Venue Provision. *See* Dkt. No. 27-1, Ex. 2 (August 17, 2023 email from Plaintiffs' counsel notifying TCP's counsel about the roughly 50,000 additional clients "prepared to file individual arbitration demands against [TCP]."). The fact that TCP's misrepresentation only first came to light after Plaintiffs sought to proceed with arbitration is immaterial because the underlying misrepresentation and deceptive act occurred at or before the time of their purchases.[4]

---

[4] TCP's unsupported argument that a section 1770(a)(14) claim does not cover a "secret intention not to comply with" represented rights, remedies or obligations is nonsensical. Dkt. No. 56 at 14. The fact that a party has a "secret intention" not to comply with rights, remedies or obligations represented in a consumer agreement is prima facie evidence that those rights, remedies or obligations were misrepresented in the first place.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS          Case No. 3:24-cv-06468-CRB

## 2.    TCP's timing argument does not apply to Plaintiffs' section 1770(a)(19) claim

TCP's timing argument also does not defeat Plaintiffs' CLRA section 1770(a)(19) claim because that claim is not based on a misrepresentation, and it does not encompass a reliance element. Moreover, TCP's modification of its Terms to include the unconscionable Arbitral Venue Provision was done in performance of the underlying purchase agreement, and therefore an actionable transaction within the meaning of the CLRA.

Although a misrepresentation or deceptive act is the gravamen of most CLRA claims, it is not the gravamen of a section 1770(a)(19) claim. The Judicial Council of California Civil Jury Instructions emphasize this by citing section 1770(a)(19) as the prototypical CLRA claim that does *not* sound in fraud, and which does *not* require proof of reliance. *See* Accompanying Declaration of Matthew J. Zevin, at Ex. 1 ("CLRA claims not sounding in fraud do not require reliance.") (citing as an example, Civ. Code § 1770(a)(19) (inserting an unconscionable provision in a contract)). It is axiomatic that if Plaintiffs do not need to prove reliance in connection with their section 1770(a)(19) claim, they do not need to show that TCP's insertion of an unconscionable term in a contract occurred before their purchase.

For this reason, *Moore* is inapposite. *Moore's* discussion of the timing issue does not exist in a vacuum, it appears exclusively in the context of the court's analysis of whether the plaintiff had "sufficiently pled actual reliance for her CLRA claim . . . ." *Moore*, 73 F. Supp. 3d at 1200; *see also id.* (stating that "to adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result.") (citing *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)). Additionally, *Moore* does not concern a section 1770(a)(19) claim, and it does not (and could not) create a reliance or timing element that does not exist under that section. Nor does it (or could it) create a new CLRA timing rule in the abstract.[5] Rather, *Moore* simply stands for the proposition that when a CLRA claim requires a consumer to prove reliance, the consumer cannot state a claim based on a post-transaction deceptive act because it would be difficult, if not impossible, to show that they relied on that act at the time of their transaction. *Id.* at 1200-01. That analysis is irrelevant to Plaintiffs' section 1770(a)(19) claim, which does not have a reliance element and, on that

---

[5] *Moore's* overarching statement that "[b]y definition, the CLRA does not apply to unfair or deceptive practices that occur *after* the sale or lease has occurred" (*id.* at 1201), is overbroad dicta in the context of Plaintiffs' section 1770(a)(19) claim.

6

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS          Case No. 3:24-cv-06468-CRB

basis alone, *Moore* is distinguishable.

*Moore* is further inapposite because it fails to recognize that an actionable "Transaction" under the CLRA is not limited to a purchase transaction. Rather, a "Transaction" broadly encompasses "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, *and the performance pursuant to*, that agreement." Cal. Civ. Code § 1761(e) (emphasis added). Thus, a "Transaction" under the CLRA includes the parties' subsequent "performance" under a consumer agreement, and nothing in the statutory text implies any temporal restrictions on a section 1770(a)(19) claim that is premised on a party's insertion of an unconscionable provision in connection with the ongoing performance of a pre-existing consumer contract. *Id.* Any other interpretation would contravene the requisite liberal construction and application of the CLRA. Cal. Civ. Code § 1760.

Applying the CLRA's definition of "Transaction" to the facts of this case demonstrates the fallacy of TCP's timing argument. Plaintiffs' each initiated arbitration "pursuant to" their existing agreement with TCP—the 2022 Terms—and TCP's subsequent modification of those Terms governing Plaintiffs' dispute was undertaken in a "transaction . . . that results in the sale . . . of goods" in the sense that it was part of the "performance pursuant to" the contract giving rise to Plaintiffs' purchases. Cal. Civ. Code § 1761(e). Put differently, the CLRA bars unfair acts taken as part of a retailer's "performance pursuant to" an agreement which resulted in the sale of goods to a consumer, even if such unfair acts postdate the actual "sale," because they are part and parcel of the initial sale. *Id.* [6]

The Court's order denying TCP's Motion to Dismiss implicitly recognizes this concept by acknowledging that because Plaintiffs are not "time travelers," they could not unwind their purchase

---

[6] For these reasons, the Court should not follow the related analysis in *Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 4352184 (N.D. Cal. Sep. 2, 2014), which dismissed an unspecified CLRA claim on the basis that a "vehicle repurchase or replacement transaction is not a 'transaction' that was 'intended to result,' or which did 'result[] in the sale or lease of goods or services' to a consumer . . . ." *Id.* at *3. Notably, the Plaintiffs in that case did not respond to the defendants' argument on that issue, and *Durkee* does not mention, let alone address, the CLRA's definition of "Transaction," which includes "the performance pursuant to" a consumer contract. It also does not address a section 1770(a)(19) claim based on the insertion of an unconscionable contract term. *Durkee*, therefore, is both factually and legally dissimilar to this case, and its blanket suggestion that "a CLRA claim cannot be based on events following a sales transaction" is inconsistent with the CLRA's definition of an actionable "Transaction." Cal. Civ. Code 1761(e). Finally, *Durkee* relies on *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, n.6 (2006), and *Harlan v. Roadtrek Motorhomes, Inc.*, No. 07-CV-0686 IEG (BLM), 2009 WL 928309 (S.D. Cal. Apr. 2, 2009), but those cases, like *Moore*, also do not discuss the CLRA's definition of Transaction, and both were based on CLRA claims premised on misrepresentations, which require proof of reliance.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS    Case No. 3:24-cv-06468-CRB

transactions to avoid the unconscionable Arbitral Venue Provision that TCP subsequently introduced and attempted to enforce against them based on disputes concerning their pre-amendment purchases. Dkt. No. 38 at 15-16. TCP's effort to apply its Terms to disputes concerning Plaintiffs' pre-amendment purchases is effectively an admission that its modification of the Terms was an act taken "pursuant to" the original Terms governing Plaintiffs' prior purchases and, therefore, part of an actionable "Transaction" as defined under the CLRA. Civ. Code § 1761(e).

For these reasons, Plaintiffs' section 1770(a)(19) claim is more akin to the claims that the Ninth Circuit found actionable in the case that *Moore* distinguishes, *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916 (9th Cir. 2014) ("*Sony*"), where the plaintiffs alleged that Sony represented at or before the time of their purchase that that two different operating software platforms would be available and function for the advertised ten-year lifespan of its PlayStation 3 gaming console ("PS3"). *Id.* at 919. After a subsequent software update restricted PS3 users to using only one of the two software platforms, the plaintiffs sued, and the Ninth Circuit held that the plaintiffs adequately alleged claims under CLRA sections 1770(a)(5) (representing that a product had a characteristic that it did not actually have), and 1770(a)(7) (providing a product of a different quality or grade than represented), even though the event causing their damages—the post-purchase software update—occurred after the sale. *Id.* at 920-21.

As noted in *Moore*, the *Sony* Plaintiffs' claims were viable, despite the software update occurring after the time of sale, "because the subsequent, free software update restricted a material feature of the good" purchased in the underlying transaction. *Moore*, 73 F. Supp. 3d at 1201. In contrast, "the subsequent, free iOS 5 software update [in *Moore*] did not vitiate a prior material representation." *Id.* Stated differently, *Moore* recognizes the distinction between cases, such as *Sony* and this case, where a subsequent act impedes a material aspect of the initial purchase agreement, and a case such as *Moore*, where it does not. *Id.* (noting that the *Moore* plaintiff did not "allege that she relied on a representation at the time she purchased her [phone] that the subsequent [] software update abrogated").

Here, Plaintiffs allege precisely what was apparent in *Sony* but lacking in *Moore*. They allege that TCP made a material representation at the time of sale that the parties had various arbitration rights, remedies and obligations, but those representations were subsequently abrogated by TCP's insertion of

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS        Case No. 3:24-cv-06468-CRB

the unconscionable Arbitral Venue Provision. Thus, even under *Moore's* analysis, Plaintiffs state a viable claim under section 1770(a)(19). *Moore*, 73 F. Supp. 3d at 1201.

**B.     The Litigation Privilege Does Not Apply to Plaintiffs' Claims**

The litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings: (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action." *Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014). At its core, the privilege protects against liability from claims *deriving* from speech and advocacy in litigation. It exists "to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1063 (2006). The privilege does not apply here because Plaintiffs' claims do not concern or offend any of those interests.

TCP spills much ink espousing the importance and "broad application" of the litigation privilege, (Dkt. No. 56 at 15), but its effort to apply the privilege in this case fails because it rests on a misleading characterization of the "crux" of Plaintiffs' claims. Specifically, TCP claims that:

> The crux of both of Plaintiffs' claims is that TCP, on the advice of counsel, modified the arbitration agreement in its [Terms] (as intended communication to its consumers, including Plaintiffs) in order to undermine Plaintiff's rights **and** communicated with the arbitrator to effect that purpose. Both TCP's posting on the Internet of its modified Terms and its letters to JAMS are quintessentially communicative conduct. Plaintiffs would have no claims to articulate absent these two communications.

Dkt. No. 56 at 8.

TCP's characterization is unsupported in the FAC and materially distorts the gravamen of Plaintiffs' claims, which do not derive from anything that was filed, communicated, or done in litigation.[7] Plaintiffs' CLRA section 1770(a)(14) claim is based on misrepresentations in TCP's 2022 Terms—a standard form consumer contract of adhesion that existed *before* Plaintiffs made their purchases, *before* Plaintiffs' claims accrued, and therefore *before* Plaintiffs even considered, let alone initiated, litigation. Plaintiffs' section 1770(a)(19) claim is based on TCP's subsequent *modification* of the original contract governing

---

[7] As discussed below, TCP's references to so-called "advice of counsel" allegations are based on allegations in Plaintiffs' original complaint, which was superseded by the FAC. Since those allegations were excluded in the FAC, it is improper for TCP to cite or rely on them in this motion, which addresses only whether judgment can be rendered on the FAC.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS          Case No. 3:24-cv-06468-CRB

Plaintiffs' purchase transactions. The fact that TCP posted the modified Terms on its website while litigation was pending with some, but not all, of TCP's customers does not magically convert Plaintiffs' CLRA claim into one stemming from a "communication . . . made in judicial or quasi-judicial proceedings." *Graham-Sult*, 756 F.3d at 741. The crux of Plaintiffs' claim remains the unconscionable substance of the amendment and the damage it caused Plaintiffs, not TCP's subsequent advocacy to enforce the amendment at JAMS.

### 1. The litigation privilege does not apply to Plaintiffs' section 1770(a)(14) claim

As TCP acknowledges, a "threshold issue in determining the applicability of the [litigation] privilege is whether the defendant's conduct was communicative or noncommunicative." Dkt. No. 56 at 16 (quoting *Rusheen*, 37 Cal. 4th at 1058). This distinction "hinges on the gravamen of the action" but the "key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." *Rusheen*, 37 Cal. 4th at 1058. "[T]he communication must have been made in a judicial or quasi-judicial proceeding," (*Graham-Sult*, 756 F.3d at 741), and it "must be 'in furtherance of the objects' of the proceeding, which is "'part of the requirement that the communication be connected with, or have some logical relation to, the [proceeding], *i.e.*, that it not be extraneous to the [proceeding].'" *Hawran v. Hixson*, 209 Cal. App. 4th 256, 282-83 (2012) (quoting *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007)).

The gravamen of Plaintiffs' section 1770(a)(14) claim is that *at the time of Plaintiffs' purchases*, TCP misrepresented the parties' arbitration rights, remedies, and obligations with respect to any disputes between TCP and its customers. *E.g.*, FAC ¶ 80 ("When [TCP] sold products to Plaintiffs and members of the Class, it represented to them that . . . they would have the right to arbitrate with JAMS, and it represented to them that the company had an obligation to arbitration with JAMS."); *id.* at ¶ 81 (explaining that those representations were false because, "[i]n reality, Plaintiffs and members of the Class have no right to arbitrate with JAMS . . . [and TCP] has no real obligation to arbitrate . . . ."). Thus, the crux of Plaintiffs' 1770(a)(14) claim is an alleged misrepresentation in TCP's 2022 Terms, which existed *before* Plaintiffs purchased anything from TCP, *before* their claims accrued, and *before* litigation commenced.

While "[a] pre-litigation communication" may also be privileged, that is "only so long as it 'relates to litigation that is contemplated in good faith and under serious consideration.'" *Durkee*, 2014 WL 4352184, at *4 (quoting *Action Apartment Assn, Inc.*, 41 Cal. 4th at 1251). That situation clearly does not

---

10

exist here because Plaintiffs do not allege (and TCP does not contend) that Plaintiffs intended to engage in (or "serious[ly] consider[ed]") litigation with TCP at or before the time of their purchases. *Id.* (holding that the litigation privilege did not apply to any claims because "[t]here are no allegations in the complaint showing that the plaintiffs anticipated litigation at the point they contacted Ford."). Even more relevant (and problematic for TCP's argument) is that there was no pending or imminent litigation when TCP first posted its 2022 Terms on its website, which was obviously *prior* to Plaintiffs' purchases. Accordingly, and regardless of whether posting Terms on a website constitutes a "communication," TCP's act of posting the 2022 Terms was clearly not in connection with pending or seriously imminent litigation. The litigation privilege therefore does not apply. *Graham-Sult*, 756 F.3d at 741; *Durkee*, 2014 WL 4352184, at *4.

TCP tries to avoid this obvious timing problem by arguing that Plaintiffs' section 1770(a)(14) claim really stems from its subsequent modification of the Terms to include the Arbitral Venue Provision, as well as its subsequent communications with JAMS concerning that modification. Dkt. No. 56 at 16 (stressing that TCP's alleged "subsequent conduct" of advocating its position with JAMS forms the basis of Plaintiffs' section 1770(a)(14) claim). TCP's position is not supported by the FAC or the CLRA.

By definition, a section 1770(a)(14) claim must be based on a representation "that a transaction confers or involves rights, remedies, or obligations that it does not have or involve . . ." Cal. Civ. Code § 1770(a)(14). The focus is on the false representation, which the plaintiff must rely on at the time of transaction. *See*, *supra*, at 4-5. The alleged misrepresentation underpinning Plaintiffs' section 1770(a)(14) claim was made in TCP's 2022 Terms, before Plaintiffs' purchases, and before any actual or contemplated litigation. That conduct was purely consumer-facing and not associated with any judicial or quasi-judicial proceeding.

Moreover, Plaintiffs' alleged harm from TCP's misrepresentation stems from their efforts to initiate arbitration under the 2022 Terms, which was *before* TCP modified its Terms and before TCP communicated with JAMS about the Arbitral Venue Provision. FAC ¶¶ 82-83. TCP's subsequent communications with JAMS may be evidence that TCP's pre-litigation representations were false, in that they illuminate how TCP never intended to arbitrate, but those communications do not form the basis of TCP's liability under the CLRA. Under a section 1770(a)(14) claim, there will likely always be some subsequent act or event that informs the consumer that the initial representation was false or misleading, but the misrepresentation still

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS                    Case No. 3:24-cv-06468-CRB

forms the crux of the claim and not the subsequent act. TCP therefore cannot demonstrate that Plaintiffs' section 1770(a)(14) claim stems from a communication made in a judicial or quasi-judicial proceeding, and its litigation privilege argument fails. *Durkee*, 2014 WL 4352184, at *4.[8]

### 2.    The litigation privilege does not apply to Plaintiffs' section 1770(a)(19) claim

The litigation privilege also does not apply to Plaintiffs' section 1770(a)(19) claim, which is based on TCP's insertion of the unconscionable Arbitral Venue Provision in its consumer Terms. *E.g.*, FAC ¶¶ 65-75. It should be axiomatic that amending a consumer agreement to include an unconscionable term that purportedly applies to *all* consumers who have transacted, or who will transact, with the retailer, regardless of whether they are involved in litigation, does not equate to a "communication . . . made in judicial or quasi-judicial proceedings . . . to achieve the objects of [] litigation. . . ." *Graham-Sult*, 756 F.3d at 741. In full context, the conduct is a consumer-facing business decision that is "extraneous" to any pending or imminent litigation. *Action Apartment Assn., Inc.*, 41 Cal. 4th at 1251.

TCP tries to fit a square peg in a round hole by arguing that Plaintiffs' claim is really about its *publication* of the modified Terms on its website, rather than the unconscionable *substance* of the modification. Dkt. No. 56 at 16 ("Here the gravamen of each of Plaintiffs' claims is TCP's alleged communicative conduct."). It also clings to Plaintiffs' allegations concerning TCP's alleged *reason* for inserting the unconscionable Arbitral Venue Provision, and its subsequent effort to enforce that provision through communications with JAMS. *E.g.*, Dkt. No. 56 at 17 (arguing "the gravamen of Plaintiffs' claim is not merely that TCP modified its Terms, but rather that it did so on the advice of counsel in order to gain an advantage in ongoing arbitration proceedings."); *see also id.* at 16 (arguing that Plaintiffs' unconscionability claim is premised on "JAMS's findings in [a letter that] the Arbitral Venue Provision effectively transforms the arbitration agreement into a unilateral obligation") (quoting FAC at ¶¶ 70, 73).

These arguments fail because they conflate TCP's conduct that gives rise to Plaintiffs' claims with its later efforts to defend that conduct in arbitration. Accepting that conflation would effectively nullify application of the CLRA in the arbitration context. If a company could immunize a misleading or

---

[8] The analysis does not change because Plaintiffs previously argued that "[t]he element of surprise was TCP's unilateral decision to modify its Terms and add the [] Venue Provision *after* Plaintiffs' transactions and *after* they began arbitration proceedings." Dkt. No. 30 at 14:4-6 (quoted by TCP in Dkt. No. 56 at 16-17). Plaintiffs made that argument to demonstrate procedural unconscionability in support of their section 1770(a)(19) claim, and TCP cannot bootstrap that argument concerning procedural unconscionability into Plaintiffs' separate and distinct misrepresentation claim under section 1770(a)(14). Dkt. No. 56 at 16-17.

12

unconscionable arbitration clause merely by later invoking or advocating for its application in an arbitral forum, the CLRA's prohibition against inserting an unconscionable term in a consumer contract would be rendered meaningless whenever a dispute over those practices proceeds to arbitration. The litigation privilege is not designed or intended to permit that end run.

This is essentially the point made in *Koarova v. National Credit Acceptance, Inc.*, 175 Cal. App. 4th 324 (2009), where the court explained that the litigation privilege should not apply if it would render a statute "significantly inoperable." *Id.* at 340 ("We must nonetheless be mindful of the ease with which the [Rosenthal Fair Debt Collection Practices Act] could be circumvented if the litigation privilege applied. In that event, unfair debt collection practices could be immunized merely by filing suit on the debt."); *see also Bassi v. Bassi*, 101 Cal. App. 5th 1080, 1103 (2024) (holding that the litigation privilege does not bar an action filed under a more specific statute when application of the privilege would render the specific provision significantly or wholly inoperable.); *People ex rel. Alzayat v. Hebb*, 18 Cal. App. 5th 801, 828 (2017) (Refusing to apply the litigation privilege where its application "would encourage rather than suppress the type of fraud the [Insurance Frauds Prevention Act] was designed to combat and would upset the legislative balance enshrined in the Act.") (citation modified).

At its core, Plaintiffs' section 1770(a)(19) claim is plainly about TCP's act of "inserting an unconscionable provision in [its] contract." FAC ¶¶ 65-75 (citing Cal. Civ. Code § 1770(a)(19)). To succeed on that claim, Plaintiffs do not need to prove *why* TCP added the unconscionable Arbitral Venue Provision to its Terms, and the fact that TCP subsequently attempted to *exploit* the unconscionable provision by communicating with JAMS does not change the gravamen of their claim. Again, TCP's communications with JAMS may be *evidence* that the amended Terms are unconscionable, but they do not form the crux of the claim, which is based exclusively on TCP's insertion of the unconscionable provision in its Terms.

Plaintiffs' claim is also not based on TCP's separate and extraneous act of *posting* the amended Terms on its website. The new Terms purportedly apply to all consumers who have interacted, or who will interact with TCP, not just Plaintiffs. The posting of the new Terms was therefore a quintessential consumer-facing business act extraneous to any specific litigation, and TCP cites no authority holding that an internet posting can constitute a communication made in litigation for purposes of applying the litigation privilege.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS          Case No. 3:24-cv-06468-CRB

Moreover, Plaintiffs' injury was being "deprived of the ability to arbitrate their claims with JAMS" and "the loss of time and money" they spent "attempting to arbitrate their claims with JAMS." FAC ¶ 75. Plaintiffs began to suffer those injuries when they first initiated arbitration, which was before TCP posted the new Terms on its website. Plaintiffs' injury therefore did not result from an act that "was communicative in its essential nature" and which was related to pending or imminent litigation. *Rusheen*, 37 Cal. 4th at 1058; *Graham-Sult*, 756 F.3d at 741; *Durkee*, 2014 WL 4352184, at *4. The "essential nature" of the act that caused Plaintiffs' injury was TCP's *insertion* of an unconscionable provision in its Terms, and not its *communication* of the modified Terms on its website. *Rusheen*, 37 Cal. 4th at 1058.

The cases TCP relies on are not remotely analogous and do not support application of the litigation privilege here. In *Pollock v. University of Southern California*, 112 Cal. App. 4th 1416 (2003), the plaintiff alleged claims for perjury, abuse of process, and malicious prosecution based on a declaration filed in support of a motion for sanctions in earlier litigation involving the same parties. 112 Cal. App. 4th at 1429. The overriding issue concerning the litigation privilege was whether the previously filed declaration was a "communication" for purposes of the privilege, and the court held it was because a declaration submitted in a court proceeding "functions as written testimony and thus constitutes communication, not conduct." *Id.* That holding is unremarkable and irrelevant here. Plaintiffs' CLRA claim is not based on a declaration or anything else that TCP submitted in litigation. It is based on TCP's insertion of an unconscionable provision in a consumer contract of adhesion.

*American Products. Co., Inc. v. Law Offices of Gellar, Steward & Foley, LLP*, 134 Cal. App. 4th 1332 (2005) also does not help TCP. In that case, the court noted that the litigation privilege has in some instances been applied to "demand letters and other prelitigation communications by attorneys." *Id.* This case does not concern any such demand letters or attorney communications, prelitigation or otherwise. It relates to TCP's insertion of an unconscionable provision in the Terms governing consumer transactions on TCP's website. *Lerette v. Dean Winter Org., Inc.*, 60 Cal. App. 3d 573 (1976) (applying the privilege to a pre-litigation demand letter) is distinguishable for the same reason, as is *hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944 (N.D. Cal. 2022), which concerned application of the privilege to a claim based on a prelitigation cease-and-desist letter. *Id.* at 967-68.

*Kotlarsz v. Integrity Vehicle Services, Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 WL 4800695 (C.D. Cal. Sep. 3, 2024) is also unavailing. There, the court held that the plaintiffs' claim under California's Invasion of Privacy Act was barred by the litigation privilege because it was based on a video that the defendants' counsel communicated to the plaintiffs' counsel during litigation. *Id.* at *6. There is no analogy here, as Plaintiffs' section 1770(a)(19) claim is not based on any communication between counsel either before or concurrent with litigation. Rather, it is based on the substance of TCP's modification to its Terms generally applicable to *all* consumers who make purchases on its website.[9]

In sum, TCP has not cited a single case (and Plaintiffs have found none) in which a party's extraneous act of posting on a website amended Terms generally appliable to active litigants and non-litigants alike amounted to a communication made in litigation sufficient to trigger the litigation privilege. This Court should not indulge TCP's request that it be the first to extend the privilege into such uncharted territory.

Finally, TCP argues that Plaintiffs' "claim is not merely that TCP modified its Terms, but rather that it did so on the advice of counsel in order to gain an advantage in ongoing arbitration proceedings." Dkt. No. 56 at 17 (citing "Dkt. No. [sic] ¶ 43"). According to TCP, "[a]cts taken with the purpose of furthering litigation goals are communicative in nature." *Id.* (citing *Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1278 (2014); and *Strawn v. Morris, Polich & Purdy, LLP*, 30 Cal. App. 5th 1087, 1095 (2019)).

Paragraph 43 of the FAC says nothing about the advice of counsel, so it does not support TCP's argument.[10] However, TCP also cites allegations from Plaintiffs' original complaint in support of this

---

[9] The court in *Kotlarsz* dismissed the plaintiffs' CIPA claim without prejudice because her allegations were "consistent with a possible allegation that [the defendant] used the video in other ways outside of the communications between counsel." *Id.* That is notable because when TCP added the unconscionable Arbitral Venue Provision, it effectively modified its agreement with *all* of its customers, and not just with respect to Plaintiffs. There were also modifications in addition to the Arbitral Venue Provision, thus demonstrating that the modified Terms were posted and used for numerous purposes *other* than "to achieve the objects of [] litigation" between TCP and Plaintiffs. *Id.* (citing *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990)).

[10] Even if an act was supposedly done at the advice of counsel in furtherance of litigation, that fact alone would not trigger the litigation privilege, as all the other requirements must be met, and *Falcon* does not hold otherwise. In that case, the plaintiffs alleged that a DNA testing laboratory committed negligence by filing in paternity court a declaration that inaccurately stated a minor was not the biological daughter of one of the plaintiffs. 224 Cal. App. 4th 1263, 1268-69 (2014). The court of appeals affirmed the trial court's holding that the litigation privileged applied because the parties were actively engaged in a judicial proceeding, "DNA testing was sought to assist" in that proceeding, and the "defendants' acts in conducting the test and communicating its results plainly furthered that goal, and had some logical relation to the action." *Id.* at 1273-74. The facts here are not remotely analogous.

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS    Case No. 3:24-cv-06468-CRB

argument, and to argue that its communications were made to achieve the objects of the litigation. Dkt. No. 56 at 17-18 (citing ECF No. 1); *id.* at 20-21 (citing ECF No. 1).

TCP's citation to allegations in Plaintiffs' original complaint is patently improper and ineffective to support its motion for judgment on the pleadings because the FAC replaced and superseded the original complaint, such that the original complaint and its allegations are deemed "non-existent." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citing cases); *see also id.* (holding that a superseded non-existent complaint "'no longer performs any function . . .'") (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992)); *cf. Brown v. Rumsfeld*, 211 F.R.D. 601, 605 (N.D. Cal. 2002) (holding that allegations in an original complaint that are not included in an amended complaint are waived) (citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)). TCP clearly knows this, as it candidly admits that the quoted allegations have been "excluded from the FAC," (Dkt. No. 56 at 20), yet it still argues that those "excluded" allegations are "key allegations" that trigger the litigation privilege. Dkt. No. 56 at 17-18. The Court should summarily reject all of TCP's arguments on this issue, because a party cannot obtain judgment on allegations in a non-existent pleading. This is particularly true since the Court has already held that the FAC states a claim *without* reference to allegations in Plaintiffs' original complaint. Dkt. Nos. 38 and 50.

## V.    CONCLUSION

For the foregoing reasons, TCP's Motion should be denied in its entirety.

Dated: January 30, 2026                                   **LYNCH CARPENTER, LLP**

By:*/s/ Matthew J. Zevin*
Matthew J. Zevin (SBN 170736)
 mattz@lcllp.com
Todd D. Carpenter (SBN 234464)
 todd@lcllp.com
Connor J. Porzio (SBN 351998)
 connor@lcllp.com
9171 Towne Centre Drive
San Diego, CA 92122
Telephone:    (619) 762-1910

**KELLER POSTMAN LLC**
Warren D. Postman (SBN 330869)
 wdp@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS          Case No. 3:24-cv-06468-CRB

Telephone:    (312) 741-5220

*Attorneys for Plaintiffs and the Putative Class*

OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS          Case No. 3:24-cv-06468-CRB