IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJA BECKFORD, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>THE CHILDREN'S GROUP, INC.,<br><br>            Defendant. | Case No.  24-cv-06468-CRB<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS** |

This case is about Defendant The Children's Place, Inc. ("TCP"), a children's clothing retailer, changing the arbitration provision of its Terms and Conditions ("Terms") for purchases on its website.[1]  FAC (dkt. 21) ¶¶ 75–76, 82–83.  Plaintiffs Aja Beckford, Zachary Cubas, Christina Labajo, and Alexus Wallace (collectively, "Plaintiffs") filed a class action on behalf of California consumers who initiated arbitration proceedings with TCP under TCP's October 2022 Terms.  Id. ¶¶ 30–31, 45, 57.  TCP updated its Terms in September 2023 to retroactively require arbitration to take place in New Jersey, TCP's principal place of business.  Id. ¶¶ 20, 29.  Plaintiffs bring two claims under the California Consumer Legal Remedies Act ("CLRA") alleging that TCP misrepresented the arbitration provision and that the arbitration provision is unconscionable.  Id. ¶¶ 65–83.

The Court previously denied TCP's motions to dismiss and reconsider.  MTD Order (dkt. 38) at 1; Order (dkt. 50) at 1.  TCP now moves for judgment on the pleadings.  Mot. (dkt. 56).  Because the two arguments TCP presents fail with respect to both of Plaintiffs' claims, the Court **DENIES** TCP's motion.

---

[1]  The Court refers to TCP by the name used by the parties, rather than the name in the caption.

United States District Court
Northern District of California

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are California residents who purchased products from TCP between November 2022 and July 2023.  FAC ¶¶ 16–19, 34–37.  The purchases were subject to TCP's October 2022 Terms, which required customers to resolve claims through arbitration.  Id. ¶¶ 26–27, 30–31.  Over 1,300 consumers, including Plaintiffs Cubas and Wallace, filed arbitration demands with arbitrator JAMS against TCP on August 15, 2023.[2]  Id. ¶ 30.  Plaintiffs requested an arbitration hearing in their hometown area, consistent with the October 2022 Terms.  Id. ¶ 45; see JAMS Letter (dkt. 21-5) at 4; October 2022 Terms (dkt. 21-2) at 7.

In September 2023, TCP added a provision ("Venue Provision") to its Terms requiring all arbitration take place in New Jersey, TCP's principal place of business.  FAC ¶¶ 20, 29.  On May 1, 2024, a second group of over 1,300 consumers, including Plaintiffs Beckford and Labajo, filed similar arbitration demands against TCP.  Id. ¶ 31.  This group of consumers also made purchases pursuant to the October 2022 Terms.  Id.  The same day, TCP sent a letter to JAMS seeking to retroactively enforce the September 2023 Venue Provision against all Plaintiffs.  Id. ¶ 43.

In June 2024, JAMS declined to administer Plaintiffs' arbitration in part because TCP refused to waive the Venue Provision.[3]  Id. ¶ 50.  JAMS found the Venue Provision violated its 2009 Consumer Minimum Standards of Procedural Fairness ("2009 Standards") and may have violated its 2024 Consumer Minimum Standards of Procedural Fairness ("2024 Standards"), both of which apply to different segments of the putative class.  JAMS Letter at 4.  The 2009 Standards state that a consumer "must have a right" to a local arbitration hearing.  Id.  And the 2024 Standards specify that the arbitral location must not preclude a consumer's arbitration hearing.  Id.  Plaintiffs spent time and money

---

[2]  Plaintiffs' arbitration demands arise from an alleged false-discount scheme by TCP that is not before the Court.  See FAC ¶¶ 30–31.

[3]  JAMS also terminated the arbitration because it could not determine from a "facial review" of the evidence whether an arbitration agreement existed between the parties.  JAMS Letter at 3.  TCP does not dispute the existence of an agreement in its current motion and briefing before the Court.  See Mot.; Reply (dkt. 59).

attempting to arbitrate their claims.  FAC ¶ 75.

Plaintiffs sued, bringing claims under Section 1770(a)(14) and Section 1770(a)(19) of the CLRA.  TCP moved to dismiss, and the Court denied the motion on February 28, 2025.  MTD (dkt. 27); MTD Order at 1.  That same day, the United States Court of Appeals for the Ninth Circuit decided Jones v. Starz Entertainment, LLC, which involved an allegedly unconscionable arbitration provision.  See 129 F.4th 1176, 1179 (9th Cir. 2025).  Citing Jones, TCP moved the Court to reconsider its denial of the motion to dismiss, and the Court denied TCP's motion.  Mot. to Recons. (dkt. 46); Order at 1.  TCP now moves for judgment on the pleadings, arguing that the CLRA does not cover its disputed conduct and that California's statutory litigation privilege bars Plaintiffs' claims.  See generally Mot.

## II.    LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  As with a Rule 12(b)(6) motion, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted).  A court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

## III.    DISCUSSION

TCP brings the same two arguments against Plaintiffs' Section 1770(a)(14) misrepresentation claim and Section 1770(a)(19) unconscionability claim.[4]  First, TCP argues that its alleged conduct falls outside the CLRA because it occurred after the sale of

---

[4]  All subsequent references to statutory sections refer to the California Civil Code.

goods.  But the relevant conduct occurred at the time of sale.  Second, TCP argues that under Section 47(b), California's statutory litigation privilege bars liability under the CLRA.  TCP's argument fails because its conduct does not fulfill all the elements required for the privilege to apply.

### A.    Conduct Covered by the CLRA

Section 1770(a) proscribes "unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  The CLRA "should be liberally construed . . . to protect consumers against unfair and deceptive business practices."  Keilholtz v. Superior Fireplace Co., No. C 08-00836 CW, 2009 WL 839076, at *3 (N.D. Cal. Mar. 30, 2009) (citing Cal. Civ. Code § 1760).

### 1.    Section 1770(a)(14)

Section 1770(a)(14) prohibits "representing that a transaction confers or involves rights, remedies, or obligations that it does not have."  Cal. Civ. Code § 1770(a)(14).  TCP makes two arguments that its alleged conduct is outside the scope of Section 1770(a)(14).  Both fail.

First, TCP argues that because the complaint does not allege the Terms were false at the time of purchase, any misrepresentation necessarily occurred after the sale.  See Mot. at 13–14.  Not so.  The Court already held that Plaintiffs plausibly alleged that the misrepresentation occurred at the time of sale.  MTD Order at 14.  The Court determined that the misrepresentation was "part of the express Terms" Plaintiffs agreed to when purchasing from TCP.  Id.  Each case TCP cites for support is inapposite because each involves a defendant's post-sale misrepresentations and violations.  See, e.g., Bin Lu v. Enigma MPC, Inc., No. 23-cv-02152-LB, 2023 WL 8360052, at *6 (N.D. Cal. Dec. 1, 2023) ("alleged abandonment came years later"); May v. Google LLC, No. 24-cv-01314-BLF, 2024 WL 4681604, at *11 (N.D. Cal. Nov. 4, 2024) (Google's alleged misuse of Google Play gift cards after the sale did not induce purchase.).

Further, determining "whether a business practice is deceptive" is usually "a

4

question of fact not appropriate for decision" on a motion for judgment on the pleadings. See Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008).  Instead, "'[t]o proceed past the pleading stage,'" Plaintiffs "'must plausibly allege that reasonable consumers are likely to be deceived' by the defendant's representation[]." See Ruiz v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC, No. 24-cv-06776-MMC, 2025 WL 2201058, at *2 (N.D. Cal. Aug. 1, 2025) (quoting Kang v. P.F. Chang's China Bistro, Inc., 844 F. App'x 969, 970 (9th Cir. 2021)).  Here, Plaintiffs allege that they agreed to Terms that entitled them to an arbitration hearing in their locale.  FAC ¶¶ 30–31; see October 2022 Terms at 7.  It is certainly "plausible that reasonable consumers would be deceived" into believing that TCP would uphold its own Terms.  See Kang, 844 F. App'x at 971.

Second, TCP argues that Plaintiffs' claim fails because Plaintiffs did not suffer harm at the time of the misrepresentation.  See Mot. at 14 n.3.  The Court disagrees.  The October 2022 Terms represented that Plaintiffs could arbitrate where they lived, which added value to the agreement by providing for convenient dispute resolution.  See October 2022 Terms at 7.  Because that was purportedly false, the Terms had less value than TCP represented when Plaintiffs agreed to them.  That is sufficient to show harm at the time of sale.  Cf. In re iPhone Application Litig., 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012) ("'[H]ad Apple disclosed the true cost of the purportedly free Apps . . . the value of the iPhones would have been materially less than what Plaintiffs paid.'" (citation omitted)).  The Court previously recognized that Plaintiffs plausibly alleged harm at the time of sale when it held that the complaint sufficiently pleaded reliance and damage stemming from the "express Terms."  See MTD Order at 12–14.

Even assuming there was no harm at the time of sale, TCP's argument still fails because TCP does not provide authority that a contemporaneous misrepresentation is outside Section 1770(a)(14) just because the harm comes later.  TCP's repeated reliance on Moore v. Apple, Inc. is representative.  73 F. Supp. 3d 1191 (N.D. Cal. 2014).  In Moore, the plaintiff claimed that she relied on misrepresentations about the iOS 5 software system

when she bought the iPhone 4, even though iOS 5 did not exist when she bought the phone. Id. at 1195. The court held that the plaintiff did not have standing because "[a]s a matter of basic chronology" the "representations and omissions had not yet taken place" when she made her purchase. Id. at 1200–01. By contrast, here, Plaintiffs plausibly relied on the misrepresentation in the October 2022 Terms, even if the harm did not manifest until TCP enforced the Venue Provision. See FAC ¶ 80; October 2022 Terms at 7; MTD Order at 12–13.

Additionally, TCP's reading of the statute would lead to absurd results. Under TCP's reasoning, consumers would have no claim if they bought a dangerously defective product based on a misrepresentation but were injured only after leaving the store. Courts have not adopted this interpretation of the CLRA. See, e.g., City & Cnty. of San Francisco v. Purdue Pharma L.P., 491 F. Supp. 3d 610, 686 (N.D. Cal. 2020) (viable Section 1770(a) claims where defendant's alleged misrepresentations forced San Francisco to later spend "millions of dollars to combat [a] huge spike in opioid abuse and overdoses"). Nor does TCP's reading comport with the liberal mandate of the CLRA "to protect consumers against unfair and deceptive business practices." See Keilholtz, 2009 WL 839076, at *3. Accordingly, TCP's conduct falls within the scope of Section 1770(a)(14).

### 2. Section 1770(a)(19)

Section 1770(a)(19) of the CLRA prohibits "inserting an unconscionable provision in [a] contract." Cal. Civ. Code § 1770(a)(19).

Citing Moore and similar cases, TCP argues that the addition of the Venue Provision to the Terms was post-sale conduct, rendering Section 1770(a)(19) inapplicable. But TCP focuses on the wrong transaction. The Venue Provision allegedly interfered with the transaction between Plaintiffs and JAMS for arbitration services. See FAC ¶ 76. As the Court previously recognized, TCP "forced" Plaintiffs "to spend time and money to arbitrate" in their hometown forum, which "TCP never intended to participate in." MTD Order at 9; see FAC ¶ 75. Plaintiffs allege that TCP unilaterally modified and sought to enforce the contract with the allegedly unconscionable Venue Provision during Plaintiffs'

United States District Court
Northern District of California

United States District Court
Northern District of California

transaction for arbitration services with JAMS.  FAC ¶¶ 29, 43.

For Section 1770(a) to apply to the transaction between Plaintiffs and JAMS, Plaintiffs must show: (1) they are consumers, (2) JAMS offered a service, (3) Plaintiffs transacted for that service for non-business purposes, and (4) TCP engaged in unfair or deceptive acts.  See Cal. Civ. Code §§ 1770(a), 1761(e).  Each element is met here.

Plaintiffs are consumers.  FAC ¶¶ 30–31.  And arbitration is a service.  See, e.g., NASD Disp. Resol., Inc. v. Jud. Council of State of Cal., 488 F.3d 1065, 1067 (9th Cir. 2007) (characterizing arbitration as a service).  Moreover, Plaintiffs conducted this arbitration for a non-business purpose.  See FAC ¶¶ 30–31.  And importantly, TCP is alleged to have engaged in unfair or deceptive practices as a third party in a transaction.  See id. ¶¶ 43, 73–74; see, e.g., In re iPhone, 844 F. Supp. 2d at 1049–50, 1071 (allowing Section 1770(a) claim against Apple even though independent applications on Apple's devices were responsible for illicit data harvesting); Keilholtz, 2009 WL 839076, at *1, *4 (permitting Section 1770(a) claim against fireplace manufacturer even though plaintiffs purchased the fireplaces through homebuilders).  Consequently, Section 1770(a) applies to Plaintiffs' transaction with JAMS, which gives rise to Section 1770(a)(19) liability.

Even assuming the transaction at issue in the Section 1770(a)(19) claim was the initial sale of goods, TCP's argument fails because its cited authority is inapposite.  TCP too broadly construes Moore, which it argues bars Section 1770(a)(19) claims based on post-sale conduct.  See Mot. at 13.  The Moore court expressly cabined its ruling to CLRA misrepresentation claims: "[T]o adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation."  Moore, 73 F. Supp. 3d at 1200.  Accordingly, the court's language that a "'CLRA claim cannot be based on events following a sales transaction'" does not apply to Section 1770(a)(19), which does not require a misrepresentation to be actionable.  See id. at 1201 (citation omitted); Cal. Civ. Code § 1770(a)(19); see also Song Fi, Inc. v. Google, Inc., No. C 14-5080 CW, 2016 WL 1298999, at *12 (N.D. Cal. Apr. 4, 2016) (conducting Section 1770(a)(19) unconscionability analysis independent of a misrepresentation).

7

TCP also fails to address contrary authority. TCP does not adequately distinguish In re Sony PS3 Other OS Litigation, where plaintiffs sufficiently alleged a Section 1770(a) claim because Sony restricted device functionality after plaintiffs' purchases. See 551 F. App'x 916, 921 (9th Cir. 2014). Here, the later insertion and enforcement of the Venue Provision create Section 1770(a)(19) liability. See id.; FAC ¶¶ 29, 43. Nor does TCP reconcile its position with Arevalo v. Bank of America Corp., where the court held there was an adequately alleged Section 1770(a)(19) violation when the defendant involuntarily enrolled the plaintiff in a supplemental credit card program after the plaintiff purchased the credit card and declined program enrollment. 850 F. Supp. 2d 1008, 1014, 1022 (N.D. Cal. 2011). Similarly, here, TCP's unilateral insertion and enforcement of the allegedly unconscionable Venue Provision after Plaintiffs already agreed to TCP's Terms is sufficient to state a claim under Section 1770(a)(19). See id. at 1022; FAC ¶¶ 29, 43.

Consequently, Plaintiffs have plausibly alleged that TCP's insertion of the unconscionable Venue Provision violates Section 1770(a)(19).

### B.    Litigation Privilege

TCP also invokes California's litigation privilege, which "immunizes defendants from virtually any tort liability." Graham-Sult v. Clainos, 756 F.3d 724, 741 (9th Cir. 2014) (citation omitted); see Cal. Civ. Code § 47(b). The "principal purpose" of the privilege is to "afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990) (citation omitted).

The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." Graham-Sult, 756 F.3d at 741. "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action." Rusheen v. Cohen, 37 Cal. 4th 1048, 1058 (2006).

### 1.    Section 1770(a)(14)

TCP argues that the gravamen of the Section 1770(a)(14) claim is the letters it sent urging JAMS to enforce the Venue Provision and the fact that the Terms with the Venue Provision were posted on its website.[5]  Mot. at 16–17.  But the essence of Plaintiffs' claim is not letters or a website post.  It is the alleged misrepresentation that took place when Plaintiffs agreed to the October 2022 Terms.  See FAC ¶¶ 30–31; Watkins v. MGA Ent., Inc., 550 F. Supp. 3d 815, 833 (N.D. Cal. 2021) ("The gravamen of Plaintiffs' . . . CLRA claims is that [the defendant] misrepresented or concealed material information . . . and that Plaintiffs relied on those misrepresentations.").  The Court previously held that Plaintiffs plausibly relied on TCP's misrepresentation of its Terms at the time of sale. MTD Order at 12–13.  Accordingly, Plaintiffs' claim centers on the alleged misrepresentation that took place before TCP sent letters or posted updated Terms to its website—not protected, communicative conduct.

Moreover, TCP's misrepresentation does not fulfill all the litigation privilege's requirements.  Plaintiffs do not allege that when they made their purchases there was any planned or ongoing "judicial or quasi-judicial proceeding."  See FAC ¶¶ 78–83; Graham-Sult, 756 F.3d at 741.  Nor is there any allegation that—at the relevant time—TCP was a "litigant[] or other participant[] authorized by law."  See FAC ¶¶ 78–83; Graham-Sult, 756 F.3d at 741.  Therefore, TCP's alleged misrepresentation could not have been made "to achieve the objects of . . . [a] litigation" or "ha[ve] some connection or logical relation to [an] action."  See Graham-Sult, 756 F.3d at 741; see also Strawn v. Morris, Polich & Purdy, LLP, 30 Cal. App. 5th 1087, 1097 (2019) ("'[T]he privilege only arises . . . when litigation is no longer a mere possibility, but has instead ripened into a proposed proceeding.'" (citation omitted)).

Accordingly, the litigation privilege does not apply to TCP's alleged

---

[5]  TCP also argues that the basis of the claim involves TCP modifying its terms on advice of counsel, but it cites to the prior complaint Plaintiffs filed in state court.  Mot. at 20.  That complaint is not operative before the Court.  See Desai v. Deutsche Bank Sec. Ltd., 573 F.3d 931, 936 n.5 (9th Cir. 2009) ("In general, 'an amended pleading supersedes the original pleading.'" (citation omitted)).  Therefore, the Court does not consider this argument.

United States District Court
Northern District of California

misrepresentation of its Terms.

### 2. Section 1770(a)(19)

Similarly, the litigation privilege does not apply to the Section 1770(a)(19) claim. TCP defines the heart of Plaintiffs' claim as "'[t]he inclusion of the Arbitral Venue Provision in the arbitration agreement render[ing] the entire arbitration agreement unconscionable.'" Mot. at 16 (citation omitted). The litigation privilege does not apply because the harm arose from TCP inserting and enforcing the Venue Provision, not from subsequently alerting JAMS about the insertion. See FAC ¶ 76; cf. hiQ Labs, Inc. v. LinkedIn Corp., 639 F. Supp. 3d 944, 967 (N.D. Cal. 2022) (privilege applied where "alleged damages hinge[d] entirely" on defendant sending a cease-and-desist letter). TCP's challenged conduct is therefore not "communicative in its essential nature." See Rusheen, 37 Cal. 4th at 1058.

Nor was TCP's decision to insert the Venue Provision "made in judicial or quasi-judicial proceedings." See Graham-Sult, 756 F.3d at 741. Plaintiffs allege that TCP unilaterally modified a consumer contract that applies to both ongoing and future arbitration. See FAC ¶¶ 29, 43. That conduct is not closely analogous to a party submitting a document during arbitration proceedings, which is the privileged conduct in the cases TCP cites in support of its invocation of the privilege. See Rasidescu v. Midland Credit Mgmt., Inc., 496 F. Supp. 2d 1155, 1161 (S.D. Cal. 2007); Nickoloff v. Wolpoff & Abramson, L.L.P., 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007).

Adopting TCP's proposed application of the litigation privilege would lead to untenable results. Such a reading would shield drafting parties that unilaterally modify arbitration terms mid-proceeding with the express goal of terminating dispute resolution. That is far beyond the "occasional unfair result" tolerated by courts in order to preserve the privilege. Cf. Silberg, 50 Cal. 3d at 214 (attorney misrepresenting an expert's impartiality was an acceptable unfair result). Because the litigation privilege simply does not apply to Plaintiffs' Section 1770(a)(19) claim, it cannot protect TCP.

United States District Court
Northern District of California

10

**IV.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** TCP's motion for judgement on the pleadings.

**IT IS SO ORDERED.**

Dated: April 3, 2026

CHARLES R. BREYER
United States District Judge